Alfred Prescott, plaintiff in error *vs.* Martin G. Bennett *et al.*, defendants in error.

(This case was argued during the January Term, 1873, and decision reserved.)

1. At the December term, 1866, of Clay Superior Court, the plaintiff obtained a judgment against the defendants.    At the September term, 1869, the Court "ordered that the same be set aside and forever annulled and made void," upon the ground that it appeared that the consideration upon which it was founded "was a note given for slaves."    At the September term, 1872, the plaintiff moved to set aside the last order.    The motion should have been sustained.

2. The judgment rendered at the September term, 1869, vacating the judgment of 1866, on the ground that it was founded on a note given for slaves, was a mere usurpation of power by the Court without any authority of law, and may be declared a nullity collaterally, without any direct proceedings to revise it.

3. It is quite apparent from the several provisions of the Code in relation to setting aside judgments, that parties would not be without a remedy, although they might not have excepted to the same within thirty days after their rendition.

McCay, Judge, dissented.

Constitutional law.   Jurisdiction.   Slave debt.   Judgments.   Bill of exceptions.   Before Judge HARRELL.   Clay Superior Court.   September Term, 1872.

For the facts of this case, see the opinions.

JOHN T. CLARKE; JOHN C. WELLS, for plaintiff in error.

TURNIPSEED & McLENDON; HOOD & KIDDOO, for defendants.

WARNER, Chief Justice.

At the December term, 1866, of Clay Superior Court, the plaintiff obtained a judgment against the defendants for the sum of $4,019 79, principal, and $1,861 15, interest.   At the September term of said Superior Court, in 1869, the Court passed the following order, after stating the names of the parties and reciting the judgment obtained at December term, 1866 : " It appearing to the Court that the consideration upon which the above judgment was founded was a note given for slaves, it is ordered that the same be set aside and forever annulled and made void."   At the September term of the same Court, in 1872, the plaintiff made a motion to set aside and vacate the order and judgment made at the September term, 1869, setting aside and annulling the judgment obtained at the December term, 1866, on the ground that the Court had no jurisdiction to render such vacating judgment, and because said judgment shows upon its face, that it was rendered on a ground wholly unknown to the law as a cause for

vacating said judgment, which latter motion the Court over-ruled, and the plaintiff excepted. The judgment rendered by the Court, at September term, 1869, setting aside and annulling the judgment of 1866, on the ground that it was founded on a note given for slaves, was a mere *usurpation of power* by the Court, without any authority of law to award such a judgment for that cause, and may be declared a nullity collaterally under the provisions of the Code without any direct proceeding to reverse it, for the reasons stated in the case of *Tison, administrator, etc., vs. McAffee, et al.* The principles of law applicable to the judgment of dismissal in that case are also applicable to the judgment of 1869 in this case, and should control it. The judgment of 1869 has no foundation for its support by any law of the land for *the cause* for which it was rendered, as is apparent on the face thereof, and cannot stand any more than a house could stand without any foundation for its support. It is quite apparent from the several provisions of the Code in relation to setting aside judgments, that parties should not be without a remedy, although they might not have excepted to the same within thirty days after the same were rendered. If that had been intended as the *only remedy* for parties to have got rid of judgments for any of the causes specified therein, the provisions of the Code would not have been enacted. I know of no principle of the common law, or of any municipal law, or moral law, or any other law which would have authorized the Court below to deprive the plaintiff of his vested right to recover the amount of his judgment obtained in 1866, for the cause apparent on the face of the judgment of 1869, and to give the same to the defendants, unless it is that old primitive law, *the simple plan* recognized by Rob Roy when he plundered on the Scottish border, to-wit: "That they should *take* who have the power." "And they should *keep* who can."

Let the judgment of the Court below be reversed.

TRIPPE, Judge, concurring.

At the December term, 1866, of Clay Superior Court, plaintiffs in error obtained judgment against defendants in error, on which execution was issued on the 4th day of March, 1867. On the 15th of July, 1869, defendants served plaintiff's attorney with a written notice, of which the following is a copy:

" GEORGIA—CLAY COUNTY.

" *To Alfred Prescott*: You are hereby notified that we will apply at the next Superior Court, to be held in and for said county of Clay, on the fourth Monday in September next, to have the judgment, upon which the above *fi. fa.* is founded, set aside and forever made void, because the consideration of the debt was slaves."

This notice was signed by defendants, by their attorneys, etc., and in the caption thereof had a statement of the *fi. fa.* At the September term, 1869, the Court, upon said application, and without any answer thereto being made by plaintiffs, so far as appears in the record, passed the following order:

" It appearing to the Court that the consideration upon which the above judgment was founded, was a note given for slaves, it is ordered that the same be set aside and forever annulled and made void." '

Notwithstanding this order or judgment, plaintiffs, on the 25th of June, 1872, had the *fi. fa.* levied on the property of defendants, and defendants filed an affidavit of illegality, setting up, amongst other grounds, the order of the Court above given. This affidavit was heard at the September term, 1872, and the Court adjudged that all the other grounds taken therein be overruled, and that the one setting up the previous order, declaring plaintiff's judgment null and void, be sustained, " the Court holding that the judgment vacating the judgment of the plaintiff is valid." On the same day said hearing was had, plaintiffs having given notice to defendants, filed a motion in writing to set aside the judgment granted at the September term, 1869, on the grounds: 1st, That the

Court had no jurisdiction to render such vacating judgment. 2d. That said judgment shows on its face that it was rendered on a ground wholly unknown to the law as a cause for vacating a judgment. Upon the hearing of this application, which was had the day it was filed, and within three years from the time the judgment sought to be set aside was granted, the Court overruled the same. Plaintiffs excepted to the rulings in the case of the affidavit of illegality, and in the motion to set aside, and one bill of exceptions brings both decisions to this Court. The same principles apply to the consideration of each decision, and it is only necessary to notice them, as to one of said rulings, the decision refusing the motion to set aside. If that judgment be affirmed, then both must stand; if it be reversed both must necessarily fall. Two questions are presented :

1st. Was the order of the Court passed in September, 1869, forever annulling, setting aside, and making void the judgment of the plaintiffs, rendered in December, 1866, because the consideration of the debt was slaves, a "legal judgment" within the meaning of that term, as used in the Code ?

2d. If it was not a "a legal judgment," did plaintiff lose his right, by lapse of time, or rather the statute of limitations, to a motion to set it aside ?

Section 3529 of the Code says: "When a judgment has been rendered either party may move in arrest thereof, or to set it aside for any defect not amendable, which appears on the face of the record or the pleadings."

The latter clause of section 3530 declares, "The motion in arrest of judgment must be made during the term at which such judgment was obtained, while a motion to set aside may be made at any time within the statute of limitations."

Section 3531 says: "If the pleadings are so defective that no legal judgment can be rendered, the judgment will be arrested or set aside."

Section 3532 provides that "a judgment cannot be arrested or set aside for any defect in the pleadings or record, that is aided by verdict, or amendable as *matter of form.*"

Prescott *vs.* Bennett *et al.*

Was, then, the order of September, 1869, a "legal judgment," or rather, were the pleadings and record on which that judgment is founded "so defective that no legal judgment could be rendered thereon."

The terms, "no legal judgment," used in the Code, evidently means something different from a judgment which is void. For the right to move to set aside a judgment obtained on pleadings so defective that "no legal judgment" can be rendered, is limited to a period "within the statute of limitations." What that period may be is not expressly stated, but the time is limited. In the case of a void judgment, "void for any cause, it is a mere nullity, and may be so held in any Court *when* it becomes material to the interest of the parties to consider it :" Code, section 3536. The right to attack a "void judgment" is never lost. No lapse of time estops it; no statute of limitation bars it. This is the rule at common law, and the Code recognizes it. The right to attack a judgment because it is obtained on pleadings so defective, that they can support "no legal judgment," is expressly, by the Code, restricted to a time "within the statute of limitations."

Whether, then, such a judgment be called "voidable," or, in the words of the Code, "no legal judgment," it is clear and positive that by the provisions of the Code, a judgment thus rendered, though it may not be a void judgment, may be either arrested during the term at which it was obtained or set aside at some subsequent term, provided the movant is "within the statutes of limitation."

It may be further said, that by the two sections of the Code quoted, it appears that what would be good in arrest of judgment, would sustain a motion to set aside. The words are, if the pleadings are so defective that no legal judgment can be rendered, the judgment will be *arrested or set aside*—arrested if the motion be made during the term at which it was obtained, or set aside if the motion, when made, be not barred by the statute of limitations. It may be asked why is the motion to arrest restricted to the term, and a motion to set aside allowed afterwards, when both are grantable on the same

grounds.   I will only reply to this by saying that it is more correct to call it an arrest of judgment, when it is made during the term, for then the judgment may not have been rendered, or if rendered, it is still during that term, within the breast of the Court, in *fieri;* whereas, after the term has ended, the judgment is complete, and before the ensuing term, might probably be enforced, and by the terms of the process issued thereon, generally, is to be enforced within that time.   After all this occurs, a motion to set it aside is, in every sense, the proper mode, and is properly so called.

The point in this is to show the resemblance between a motion in arrest and a motion to set aside, as recognized in the sections of the Code quoted.   It is true, that a motion entitled a motion to set aside, is sometimes made for matters extrinsic the pleadings or record.   In such cases, they are practically more to be likened unto motions for new trials, and substantially are the same in form and effect.

The first question, then, may be put in two forms:   Was the judgment granted in September, 1869, a judgment founded on pleadings, or a record so defective that a motion in arrest thereof could have been made and sustained at that term; or, generally, was it founded on pleadings so defective that no legal judgment could have been rendered?   No one can deny that the pleadings and record showed no ground for any motion; no right to what it asked; no cause of action; nothing on which to rest a judgment.   The motion prayed the Court to vacate a valid legal judgment, because the consideration of the debt was slaves.   It might as well have been, so far as it furnished a ground for the judgment invoked, because the consideration was land or bank bills; or, because·it was not gold or silver, or simply because the defendants did not wish to pay the debt.   Such a cause shown in any declaration, petition, motion, or other pleadings, furnishes nothing to support any judgment.   It would be a case where the pleadings would be so defective that no legal judgment could be rendered.   If a verdict had been obtained in such a case, surely there would be a ground for a motion in arrest of judgment,

Prescott *vs.* Bennett *et al.*

if made during the term. If a motion in arrest could be sustained because no legal judgment could be rendered, why, then, if the judgment had been rendered, would not a motion to set it aside be sustained on the same ground? The Code, in plain terms, grants the right to such a motion.

At common law the rule is, and so it is under the provisions of the Code: "When anything is omitted in the declaration, though it be matter of substance, if it be such as that, without proving it at the trial, the plaintiff could not have had a verdict, and there be a verdict for the plaintiff, such omission shall not arrest the judgment:" 2 Tidd's Practice, 919. "This rule, however," says the same authority, "is to be understood with some limitation; for when the plaintiff has stated his title or ground of action definitely, or inaccurately, (because to entitle him to recover all circumstances necessary in form or substance to complete the title so imperfectly stated, must be proved at the trial) it is a fair presumption, after a verdict, that they were proved; but that when the plaintiff totally omits to state a title or cause of action, it need not be proved at the trial, *and therefore there is no room for presumption.* And hence it is a general rule *that a verdict will aid a title defectively set out, but not a defective title,* or, in other words, nothing is to be presumed after a verdict but what is expressly stated in the declaration, or necessarily implied from the facts which are stated:" *Ibid.,* 919.

In the case at bar there is not simply a defective ground or cause, but there is no cause, no ground. The application gives a reason why the movant asks the judgment. But it is a reason that no authority, no enactment, statutory or organic, could make or convert into a ground on which a legal judgment could be rendered or be made to support a judgment. If neither the Legislature nor the people, in convention assembled, could make such a reason, so to call it, a ground or cause on which the Court could render a legal judgment, is not such a judgment, if rendered without this or any authority, obtained on pleadings so defective that no legal judgment could be rendered thereon. If the provisions in the Consti-

tution of 1868, under which it is taken for granted this judgment was rendered, were valid and operative, it forbade this very judgment, and denied jurisdiction to the Court to render it. Under that provision it would have been void—a nullity: 40 *Georgia*, 341. That provision of the Constitution has been declared void itself—and there is no law that can make the cause of action or ground given in the application such as to save the pleadings from being so defective that no legal judgment could be rendered.

I do not consider the judgment which is sought to be set aside a mere erroneous judgment, or that it is now asked to be set aside for a mere error of law supposed to have been committed by the Court in rendering it. The rule in such cases is well known and is fully recognized. Such errors or erroneous judgments, supposed to exist in the decision of a Court at a previous term, are not a sufficient justification for revising and annulling them at a subsequent term in a summary way, on motion: 6 How. R., 38; 13 Peters, 511; 4 Cranch, 241. Such is the uniform rule of both American and English decisions. But this case goes far beyond the line set up by these authorities. The judgment rendered in September, 1869, was more than an erroneous judgment—a mere error of law. It was founded on that on which no legal judgment could be rendered. It may have the face of brass, but its feet are of clay. Nay, more; its face shows the same element that constitutes the weakness of its foundation.

If a suit be brought on a parol contract which the statute of frauds require to be in writing, and nothing is alleged to be in writing, and nothing is alleged to bring it within any of the exceptions, the plaintiff obtains a verdict it will be presumed that the facts necessary to take it out of the statute were proven, and the judgment will be sustained. Such defects are aided by verdict. But if the pleading show the alleged cause of action is illegal, or for something legally criminal, no legal judgment can be rendered, or it can be arrested if moved against during the term at which it is rendered, or under the Code can be set aside subsequently, if motion be

made within the proper time. When the pleadings show no cause of action whatever, they can be no more available to sustain a judgment than if the cause shown be immoral or illegal.

The second question is, was this motion to set aside the judgment rendered in September, 1869, made within the proper time. The words of the Code, already quoted, are: " A motion to set aside may be made at any time within the statute of limitations." No particular limitation is referred to. The question must be solved by reference to such provisions in the statute as by analogy are applicable. Before this provision in the Code was adopted there was no uniformity of practice in the matter of setting aside a judgment, so far as concerned the time in which it could be done. Each case was within the discretion of the Court, and rested on its own merits. Section 2868 of the Code says all bills of review or for a new trial, in a Court of equity (unless the latter be founded on proof of perjury in a material witness for the successful party) shall be brought within three years after such a decree or judgment has been rendered. I am of opinion that the new trial referred to in this section means a new trial both in equity causes and causes at law; for it speaks of the *judgment or decree,* relief from which is sought in the new trial prayed for. Besides, there can be no good reason to confine it to new trials in equity cases, and there is as much necessity for its applying to cases in one tribunal as in the other. It probably might not be a far-fetched analogy to say that this is the period intended in section 3530 of the Code. The section prescribing the time within which a judgment shall become dormant or barred if not revived, does really, in my opinion, suggest more reasons why that should be taken as the proper time than the one first cited. The judgment of the plaintiff would become dormant within seven years from its rendition unless saved by the proper entries. If, when the order vacating it was granted, three years had transpired, and in four years more it would become dormant, it would look reasonable to say that the plaintiff should have that period of

time to move to set aside the vacating order, which would be required to elapse before his judgment would be barred. After that time the right to make such a motion could be of no avail. For if the judgment would have become of no force, or barred, a motion setting aside the vacating order could only leave nothing on which to found further action. *Lex non frustra facit* is one of the primary principles of our jurisprudence. The law will not attempt to do an act which would be fruitless. Brown's Legal Maxims, and Kent, Chief Justice, say : " This is a maxim of our legal authors, (Brown's Legal Maxims, 185; 3 John. R., 598,) as well as a dictate of common sense."

But, be the time three years, or the four years unexpired of the seven, counting from the time when the order of 1869 was passed to the time the judgment would become dormant, this motion was made within either of those periods. It was not quite three years from the day in September, 1869, when the vacating order was granted, to the 24th of September, 1872, when the motion to set aside was made, and the judgment here complained of as error, was rendered ; and seven years from the date of the original judgment which was vacated, would not have expired until more than a year after this motion to set aside was made.

I am strongly inclined to the opinion that the true rule for the interpretation of the clause limiting the time in which a motion may be made to set aside a judgment under the provisions of the Code cited, and which is expressed in the words, " within the statute of limitations," is, that rule which would limit the time to that period in which the right, or the right of action, growing out of the matter which is, *sub judice*, would become barred by the statute of limitations. This rule, in my opinion, is most consistent with the correct principle of construction as furnished by all the analogies of the law. The words, " within the statute of limitations," are not clear and positive as to the time, and we are compelled to search for a proper construction. If seven years be adopted as the fixed period in all cases, by analogy to the time in which a

Prescott *vs.* Bennett *et al.*

judgment becomes dormant, we have the singular anomaly in the case of setting aside an order vacating a judgment, against which six years have already run, of allowing a motion seven years thereafter to set aside, when the judgment itself would have become nearly twice over dormant and barred. The plaintiff would take his order, but the fruit thereof would be the fruit of the Dead Sea, and the law be made to do a vain thing.

Again, where a suit on an account against which the statute had run three years was dismissed in some proceeding which would authorize the setting aside the order of dismissal, and seven years after that, when the debt had become barred by nearly three times the statutory period, and the plaintiff failing for a year to recommence his suit, he could review the whole litigation by a motion to set aside the order dismissing his suit, and which was granted at a time so far back that nearly double the time necessary to bar his right of action had elapsed since the order itself was passed of which he complains. But the rule I have stated presents no such difficulty. It does not invite litigation, nor does it subject the Courts to the hazard of the abolition of the principle, *interest reipublicæ ut sit finis litium.* It allows to the party plaintiff, who comes within the principle, his motion to set aside, within the time, and that time only, beyond which he would be barred by non-action—and of course he could have no legal or other ground of complaint that it was not longer. If he be defendant and be likewise within the principle, he would be limited to a similar period, to-wit: such a period within which this cause of action he is contesting would not be barred ; or, if his motion grow out of some counter right or cause of action set up by him, then to such a period within which it would not be barred.

Thus the spirit and principle of the statute of limitations, as it applies different periods to different rights or causes of action, would be preserved and applied, as by the statute the case might require. And the rule that comes nearest to this, is, in my judgment, the proper one whereby to construe the

words, "within the statute of limitations," when they are used to designate the time in which a motion to set aside may be made.

For these reasons, and as this motion was made in the proper time, I concur in the judgment reversing the judgment of the Court below.

McCAY, Judge, dissenting.

This was a motion made at September term, 1872, of Clay Superior Court, to set aside a judgment of that Court, rendered at September term, 1869, on the sole ground that, from the grounds set forth in the motion of September term, 1869, and from the reasons given in the judgment itself, it is apparent that the Court erred in its judgment as to what was the law. As no motion was made during the term to reconsider, and no bill of exceptions was filed within thirty days after the adjournment of September term, 1869, it is my opinion, that both parties to that judgment are, by the settled rules of law, and the universal practice of Courts, conclusively presumed to have acquiesced in the judgment, and that any error of the Judge at September term, 1869, cannot be made an error of September term, 1872, so as thus to save the party from his *laches* in not then taking the steps provided by law for correcting the errors in law of the Judges of the Superior Courts in the judgments they render. The judgment sought to be set aside is not irregular. It was formally made in writing, with notice to the other party; it was regularly passed upon, and the judgment entered on the minutes of the Court. There is no complaint of surprise, fraud, mistake of fact, providential hindrance, or of any failure on the part of the movant to conform to the practice of the Court in such cases. the judgment is not, therefore, irregular. No extraordinary cause exists for a new trial. Nor is it void. The Court had jurisdiction of the parties, and of the subject matter. Of the parties, for the motion was on notice to the other side, and of the subject matter, for a Court may always entertain a motion to set aside its former judgments for want of jurisdiction in

the Court to enforce them. At last, therefore, it seems to me, that the sole objection to the judgment of September term, 1869, is, that the Court was in error in his opinion of the law. And as, in my judgment, this proceeding has for its sole object the purpose to escape the *laches* of the party in failing to file his bill of exceptions within thirty days after the adjournment of September term, 1869; I am compelled to dissent from the judgment of reversal.