## FRANK *v.* THE STATE.

1. Due process of law implies the administration of laws which apply equally to all persons according to established rules, and which are "not violative of the fundamental principles of private right, by a competent tribunal having jurisdiction of the case and proceeding upon notice and hearing."

(*a*) Consequently, where one indicted for murder has had full opportunity, under the constitution and laws of the State, to defend his case in the courts of the State having jurisdiction thereof, in person, by attorney, or both, according to established constitutional rules of procedure, he has been afforded due process of law under the State and Federal constitutions, which provide that no person shall be deprived of life, liberty, or property, without due process of law.

(*b*) And where such opportunity has been, under constitutional laws of the State, afforded without discrimination, he has been accorded the · equal protection of the laws.

2. If on the trial of one indicted for murder a verdict of guilty is received in the absence of the prisoner, and without his consent, while he is incarcerated in jail, a motion for new trial is an available remedy in such case, if made in time.

(*a*) But where a motion for a new trial is made by the defendant, with knowledge of the fact that the verdict was rendered in his absence, and such motion does not contain that fact as a ground for new trial, though it is recited therein, it is too late, after the motion for new trial has been denied and the judgment has been affirmed by this court, to make a motion to set aside the verdict on that ground.

3. It is the right of a defendant on trial for crime in this State to be present at every stage of his trial, and to be tried according to established procedure. But he may waive formal trial and verdict, and plead guilty, and this includes the power to waive mere incidents of trial, such as his presence at the reception of the verdict.

(*a*) Accordingly, where on the trial of one accused of murder the counsel for the accused, at the suggestion of the trial judge, waived the presence of the defendant at the reception of the verdict, without his knowledge or consent, and where the verdict was received and the jury polled by the court when the defendant was not present but was confined in jail, and the defendant's counsel were also absent; and where it appears that when the defendant was sentenced to suffer death he was present in court in person and by attorneys, and later, within the time allowed by law, he made a motion for a new trial, which recited, among other things, his absence at the reception of the verdict and that his presence

had been waived by his counsel, and his motion for new trial was re-
fused by the trial court and its judgment was affirmed by the Supreme
Court, the defendant will be considered as having acquiesced in the
waiver, made by his counsel, of his presence at the reception of the
verdict, and he can not at a subsequent date set up such absence as a
ground to set aside the verdict, in a motion made for that purpose.

4. In so far as the motion to set aside the verdict relies on allegations of
disorder within and without the court-room, and popular excitement as
affecting the trial, such matters peculiarly furnish grounds to be included
in a motion for a new trial, under the practice in this State. In fact
contentions as to matters of that character were included in the original
motion for a new trial, and on examination as to the facts were ruled
against the movant, and the judgment was affirmed by this court.

NOVEMBER 14, 1914.

Indictment for murder. Before Judge Hill. Fulton superior
court. June 6, 1914.

Leo M. Frank filed his motion in writing, which was afterwards
amended, to set aside the verdict of guilty of murder rendered
against him in the superior court of Fulton county. To this motion
the State of Georgia interposed its demurrer, both general and
special. On the hearing of the demurrer, and at the conclusion
thereof, judgment was rendered by the court, on June 6th, 1914,
sustaining the demurrer upon each and every ground, and dismiss-
ing the motion. To this judgment Leo M. Frank excepts and
assigns the same as error. From the motion it appears that the
verdict of guilty of murder was received by the court on August 25,
1913; and it was sought to be set aside for the following reasons:
At the time the verdict was received, and the jury trying the cause
was discharged, the defendant was in the custody of the law and in-
carcerated in the common jail of the county. He was not present
when the verdict was received and the jury discharged, as he had
the right in law to be, and as the law required he should be. He
did not waive the right to be present, nor did he authorize any one
to waive it for him, nor consent that he should not be present. He
did not know that the verdict had been rendered and the jury dis-
charged until after the reception of the verdict and the discharge
of the jury, and did not know of any waiver of his presence made
by his counsel until after sentence of death had been pronounced
upon him. On the day the verdict was rendered, and shortly before
the judge who presided at the trial of the cause began his charge
to the jury, the judge, in the jury-room of the court-house wherein
the trial was proceeding, privately conversed with two of the coun-

sel of the defendant, and in the conversation referred to the probable danger of violence that the defendant would be in if he were present when the verdict was rendered and if the verdict should be one of acquittal; and after the judge had thus expressed himself, he requested the counsel thus spoken to to agree that the defendant need not be present at the time the verdict was rendered and the jury was polled. In these circumstances the counsel did agree with the judge that the defendant should not be present at the rendition of the verdict. In the same conversation the judge expressed the opinion also to the counsel that even counsel of the defendant might be in danger if they should be present at the reception of the verdict. In these circumstances defendant's counsel, Rosser and Arnold, did agree with the judge that the defendant should not be present at the rendition of the verdict. The defendant was not present at the conversation, and knew nothing about any agreement made, as above stated, until after the verdict was received and the jury was discharged and until after sentence of death was pronounced upon him. Pursuant to the conversation above stated, neither of defendant's counsel was present when the verdict was received and the jury discharged; nor was the defendant present when the verdict was rendered and the jury discharged. Defendant says he did not give counsel, or any one else, any authority to waive or renounce the right of the defendant to be present at the reception of the verdict, or to agree that the defendant should not be present thereat; and that the relation of client and attorney did not give them such authority, though counsel acted in the most perfect good faith and in the interest of the personal safety of the defendant. Defendant did not agree that his counsel, or either of them, might be absent when the verdict was rendered. Defendant says, upon and, because of each of the grounds above stated: That the verdict was of no legal effect and was void, and in violation of art. 1, sec. 1, par. 3, of the constitution of the State of Georgia, which provides that "No person shall be deprived of life, liberty, or property, except by due process of law." That the reception of the verdict in the "involuntary absence of the defendant" was in violation of and contrary to the provisions of art. 6, sec. 18, par. 1, of the constitution of the State of Georgia, which provides that "The right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate." That the reception of the

verdict in the absence of the defendant was contrary to and in violation of the provisions of the fourteenth amendment to the constitution of the United States, to wit: "Nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." That the reception of the verdict in the absence of the defendant was in violation of art. 1, sec. 1, par. 5, of the constitution of the State of Georgia, to wit: "Every person charged with an offense against the laws of this State shall have the privilege and benefit of counsel." Because the trial judge (Hon. L. S. Roan), upon considering "the motion for a new trial made by this defendant, after the reception of said verdict as above stated, rendered his judgment denying said motion, and in rendering said judgment stated that the jury had found the defendant guilty; that he, the said judge, had thought about the cause more than any other he had ever tried; that he was not certain of the defendant's guilt; that, with all the thought he had put on this case, he was not thoroughly convinced that Frank was guilty or innocent, but that he did not have to be convinced; that the jury was convinced; that there was no room to doubt that; and that he felt it his duty to order that the motion for a new trial be overruled." That the judge in denying to the defendant a new trial in the case, did not, as shown by his statement, give to the defendant the judicial determination of the motion to which the defendant was entitled by law; that the judge, being constituted by law as one of the triors, did not afford to the defendant the protection which the law guarantees, nor the due process of law. It was further alleged: that the defendant was denied due process of law and the equal protection of the laws, because the court-room wherein his trial was conducted had a number of windows on the Pryor street side, looking out on the public street of Atlanta, and furnishing easy access to any noises that might occur upon the street; that there was an open alleyway running from Pryor street on the side of the court-house, and there were windows looking out from the court-room into this alley, and therein crowds collected, and any noises in this alley could be heard in the court-room; that these crowds were boisterous; that on the last day of the trial, after the case had been submitted to the jury, a large and boisterous crowd of several hundred people were standing in the street in front of the court-

house, and as the solicitor-general came out they greeted him with loud and boisterous applause, taking him upon their shoulders and carrying him across the street into a building wherein his office was located; that this crowd did not wholly disperse during the interval between the giving of the case to the jury and the time when the jury reached its verdict; that several times during the trial the crowd in the court-room, and outside of the court-room which was audible both to the court and the jury, would applaud when the State scored a point, a large crowd of people standing on the outside cheering, shouting and hurrahing, and the crowd in the court-room signifying their feelings by applause and other demonstrations, and on the trial, and in the presence of the jury, the trial judge in open court conferred with the chief of police of the City of Atlanta and the colonel of the Fifth Georgia Regiment stationed in Atlanta, which had the natural effect of intimidating the jury, and so influencing them as to make impossible a fair and impartial consideration of defendant's case; indeed such demonstrations finally actuated the court in making the request of defendant's counsel, Messrs. Rosser and Arnold, to have the defendant and the counsel themselves to be absent at the time the verdict was received in open court, because the judge apprehended violence to the defendant and his counsel; and the apprehension of such violence naturally saturated the minds of the jury so as to deprive the defendant of a fair and impartial consideration of his case, which the constitution of the United States, in the fourteenth amendment hereinbefore referred to, entitled him to. On Saturday, August 23, 1913, previously to the rendition of the verdict on August 25, the entire public press of Atlanta appealed to the trial court to adjourn court from Saturday to Monday, owing to the great public excitement, and the court adjourned from Saturday twelve o'clock m. to Monday morning, because it felt it unwise to continue the case that day, owing to the great public excitement, and on Monday morning the public excitement had not subsided, and was as intense as it was on Saturday previous. When it was announced that the jury had reached a verdict, the trial judge went to the court-room and found it crowded with spectators, and, fearing violence in the court-room, the trial judge cleared it of spectators, and the jury was brought in for the purpose of delivering their verdict. When the verdict of guilty was announced, a signal to that effect was given to the crowd

on the outside. The large crowd of people standing on the outside cheered and shouted as the jury was beginning to be polled, and before more than one juror had been polled the noise was so loud and the confusion so great that the further polling of the jury had to be stopped so as to restore order; and so great was the noise and confusion and cheering and confusion from without, that it was difficult for the court to hear the responses of the jurors as they were being polled, though the court was only ten feet distant from the jury. All of this occurred during the involuntary absence of the defendant, he being at the time confined in jail as above set forth.

The State of Georgia, responding to the motion to set aside the verdict, said, by way of demurrer, that the motion should be dismissed for the following reasons: (1) Because a motion to set aside a verdict or judgment of the court should, under the law, be predicated upon some defect appearing on the face of the pleadings or record, and the motion filed is not one predicated upon any defect appearing on the face of the pleadings or the record. (2) Because it affirmatively appears from the motion that the defendant, Leo M. Frank, made a motion for a new trial, which was denied by the court; and as a matter of law, if the verdict was rendered at a time when the defendant was not present in court, such irregularity should have been included among the grounds of the motion for a new trial, and, as a matter of law, is conclusively presumed to have been incorporated and embodied in the motion for new trial, which motion was heard and denied as shown by the petition. (3) Because the motion shows a course of conduct on the part of the defendant which amounts to an estoppel. And that the motion and the record of the decision of the case of Leo M. Frank against the State, rendered by the Supreme Court of Georgia, affirmatively shows a course of conduct that amounts to and constitutes an estoppel. (4) Because the motion affirmatively discloses that counsel for the defendant agreed with the court that the defendant should not be present at the rendition of the verdict; and this agreement on the part of counsel was and is binding on the defendant, Leo M. Frank, and effectively constitutes a waiver. (5) Because the motion, in conjunction with the decision of the Supreme Court of Georgia in the case of Leo M. Frank against the State of Georgia, affirmatively shows that Frank, after a knowledge of this waiver on the part of his counsel, acquiesced in the same and took steps

affirmatively indicating a waiver of such conduct on the part of his counsel. (6) Because the motion affirmatively shows that the jury returning the verdict were polled, and the presence of the defendant is necessary for himself mainly in order to exercise his right to poll the jury. (7) Because the motion and the decision of the Supreme Court of Georgia in the case above named affirmatively disclose that the verdict of guilty was received in open court and a poll of the jury demanded on behalf of the defendant, and that the poll of the jury was in conformity with every requirement of law.

*Tye, Peeples & Jordan, Herbert Haas, Leonard Haas,* and *Henry A. Alexander,* for plaintiff in error.

*Warren Grice,* attorney-general, *Hugh M. Dorsey,* solicitor-general, and *E. A. Stephens,* contra.

HILL, J. (After stating the foregoing facts.)

1. Did the absence of the defendant, under the foregoing statement of facts, at the time that the verdict finding him guilty of murder was received by the court and the jury trying him was discharged, render the verdict void and of no legal effect? It is insisted by the defendant that the reception of the verdict in his involuntary absence, while he was confined in jail, was in violation of the due-process clauses of the State and Federal constitutions, and that it denied him the equal protection of the laws. "Due process of law, as the meaning of the words has been developed in American decisions, implies the administration of equal laws according to established rules, not violative of the fundamental principles of private right, by a competent tribunal having jurisdiction of the case and proceeding upon notice and hearing. The phrase is and has long been exactly equivalent to and convertible with the older expression 'the law of the land.' The basis of due process, orderly proceedings, and an opportunity to defend, must be inherent in every body of law or custom as soon as it advances beyond the stage of uncontrolled vengeance." McGehee on Due Process of Law, 1, citing Chicago etc. R. Co. *v.* Chicago, 166 U. S. 226 (17 Sup. Ct. 581, 41 L. ed. 979). On page 35, this same author says: "Before the passage of the Fourteenth Amendment the security of the citizens of the several States for due process of law in proceedings by the State lay in its institutions alone. Even if due process was denied, the Federal government had no right to interfere. The Fourteenth Amendment changed this condition of affairs. It made

it a matter of national concern that the State should not deny due process to its citizens and to others. It gave to the United States the right to supervise the performance of this duty, and transferred from the State to the Federal Supreme Court the ultimate decision on the question of the presence of due process in all proceedings affecting life, liberty, and property. But under the amendment the authority of the Federal court is merely to determine whether the State by some official action has provided due process or has failed in that duty; and if a denial of due process appears, it can only pronounce the proceedings void. The power of the Federal government ordinarily ends with that act. Thus the primary duty of providing for the protection of life, liberty, and property by due process of law rests still with the States, and the Fourteenth Amendment operates merely as a guaranty additional to the State constitutions against encroachments on the part of the State upon fundamental rights, which their governments were created to secure. It did not radically change the whole theory of the relations of the State and Federal governments to each other and of both governments to the people." See United States *v.* Cruikshank, 92 U. S. 542 (23 L. ed. 588); In re Kemmler, 136 U. S. 436-438 (10 Sup. Ct. 930, 34 L. ed. 519). "The Federal Supreme Court has again and again declared that when the highest court of a State has acted within its jurisdiction and in accordance with its construction of the State constitution and laws, very exceptional circumstances will be necessary in order that the Federal Supreme Court may feel justified in saying that there has been a failure of due process of law. 'We might ourselves have pursued a different course, but that is not the test. The plaintiff in error must have been deprived of one of those fundamental rights, the observance of which is indispensable to the liberty of the citizen, to justify our interference.' For especially in cases involving procedure is it true that 'due process of law means law in its regular course of administration through courts of justice.'" McGehee, Due Process of Law, 167, citing Allen *v.* Georgia, 166 U. S. 138 (17 Sup. Ct. 525, 41 L. ed. 949), which case is cited with approval in Wilson *v.* North Carolina, 169 U. S. 586, 595 (18 Sup. Ct. 435, 42 L. ed. 865). In Rawlins *v.* Georgia, 201 U. S. 638 (26 Sup. Ct. 560, 50 L. ed. 899, 5 Ann. Cas. 783), it was contended, because many lawyers, preachers, doctors, engineers, firemen, and dentists were excluded from jury service in

Georgia by the jury commissioners failing and refusing to put any of the names of the classes excluded in the jury-box, that the defendant had rights under the Fourteenth Amendment. In delivering the opinion of the court in that case, Mr. Justice Holmes said: "At the argument before us the not uncommon misconception seemed to prevail that the requirement of due process of law took up the special provisions of the State constitution and laws into the Fourteenth Amendment for the purposes of the case, so that this court would revise the decision of the State court that the local provisions had been complied with. This is a mistake. If the State constitution and laws as construed by the State court are consistent with the Fourteenth Amendment, we can go no further. The only question for us is, whether a State could authorize the course of proceedings adopted, if that course were prescribed by its constitution in express terms."

In the case of Garland v. Washington, 232 U. S. 642 (34 Sup. Ct. 456, 58 L. ed. 772), it was held that "A conviction upon a second and amended information, after a prior conviction under the original information had been set aside and a new trial granted, was not wanting in the due process of law guaranteed by U. S. Const., 14th Amend., because no arraignment or plea was had upon the second information, where, without raising that specific objection before trial, the accused had made certain objections to such information, and was put to a trial thereon before a jury in all respects as though he had entered a formal plea of not guilty." In delivering the opinion of the court (which was unanimous), Mr. Justice Day said, in part: "Due process of law, this court has held, does not require the State to adopt any particular form of procedure, so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution. Rogers v. Peck, 199 U. S. 425, 435 [26 Sup. Ct. 87, 50 L. ed. 256], and previous cases in this court there cited. Tried by this test it can not for a moment be maintained that the want of formal arraignment deprived the accused of any substantial right, or in any wise changed the course of trial to his disadvantage. All requirements of due process of law in criminal trials in a State, as laid down in the repeated decisions of this court, were fully met by the proceedings had against the accused in the trial court. . . Technical objections of this character were

undoubtedly given much more weight formerly than they are now. Such rulings originated in that period of English history when the accused was entitled to few rights in the presentation of his defense, when he could not be represented by counsel, nor heard upon his own oath, and when the punishment of offenses, even of a trivial character, was of a severe and often of a shocking nature. Under that system the courts were disposed to require that the technical forms and methods of procedure should be fully complied with. But, with improved methods of procedure and greater privileges to the accused, any reason for such strict adherence to mere formalities of trial would seem to have passed away, and we think that the better opinion, when applied to a situation such as now confronts us, was expressed in the dissenting opinion of Mr. Justice Peckham, speaking for the minority of the court in the Crain Case [162 U. S. 625, 16 Sup. Ct. 952, 40 L. ed. 1097], when he said (p. 649) : 'Here the defendant could not have been injured by an inadvertence of that nature. He ought to be held to have waived that which, under the circumstances, would have been a wholly unimportant formality. A waiver ought to be conclusively implied where the parties had proceeded as if defendant had been duly arraigned, and a formal plea of not guilty had been interposed, and where there was no objection made on account of its absence until, as in this case, the record was brought to this court for review. It would be inconsistent with the due administration of justice to permit a defendant under such circumstances to lie by, say nothing as to such an objection, and then for the first time urge it in this court.' " See Trono *v.* United States, 199 U. S. 521 (26 Sup. Ct. 121, 50 L. ed. 292, 4 Ann. Cas. 773). Authorities might be multiplied to the effect that if the State laws as construed by the State courts are not inconsistent with the provisions of the fourteenth amendment, there is no denial of due process of law within the meaning of that provision of the Federal constitution.

Art. 1, sec. 1, par. 4, of the constitution of the State of Georgia (Civil Code, § 6360) declares that "No person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State, in person, by attorney, or both." By section 6079 of the Civil Code of 1910 it is provided that "The several superior courts of this State shall have power to correct errors and grant new trials in any cause or collateral issue depending in any of the said

courts, in such manner and under such rules and regulations as they may establish according to law and the usages and customs of courts." And see sections 6080 et seq., as to the procedure in such cases. Provision is made that cases tried in the superior courts may be reviewed by the Supreme Court, which has appellate jurisdiction to hear and determine all cases, civil and criminal, that may come before it, and to grant judgments of affirmance or reversal, etc. Civil Code, § 6103. And how stands the case with reference to our State constitution and laws as affording the defendant due process of law? Art. 1, sec. 1, par. 3, of the constitution of Georgia (Civil Code of 1910, § 6359) provides that "No person shall be deprived of life, liberty, or property, except by due process of law." This provision of the State constitution is in substantial accord with the fourteenth amendment to the constitution of the United States, which declares that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Civil Code, § 6700. Thus it will be seen that provision has been made in "the law of the land" by which all who are charged with crime can make their defense; and in case of conviction in the trial court, they can make a motion for a new trial in that court on account of any alleged errors which may have been committed in the trial court. If the motion is denied by the trial court, the accused can take the case to the Supreme Court by writ of error, or by direct bill of exceptions, and have the case reviewed. We think it can not be said, therefore, in view of the ample provisions made by the constitution and laws of Georgia for any one accused of crime to exercise his right of defense in our courts, that he is denied "due process of law," or the equal protection of the laws. See *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016).

2. In this State a defendant charged with crime and tried by a jury is given the right, by motion for a new trial, to have reviewed a verdict and judgment rendered against him, and have it set aside for an illegality, or irregularity amounting to harmful error, in the trial, including such ground as the reception of a verdict in his absence. But where such motion is made, it should include all proper grounds which were at the time known to the defendant or

his counsel, or which by reasonable diligence could have been discovered. *Leathers* v. *Leathers,* 138 *Ga.* 740 (76 S. E. 44). A motion in arrest of judgment is also available to the defendant in a proper case; but a motion in arrest of judgment must be made during the term of court at which the judgment was obtained, and must be predicated upon some defect which appears upon the face of the record or pleadings. Civil Code (1910), § 5958. But this court has decided a number of times that objections to the reception of a verdict in the absence of the defendant, and to recharging the jury in the absence of the prisoner, and similar alleged errors, can be made in a motion for a new trial. In *Wade* v. *State,* 12 *Ga.* 25, the defendant (a verdict for assault with intent to rape being rendered against him) made a motion for a new trial, one of the grounds being that the court read testimony taken down by the court to the jury in the absence of the prisoner, and without consent of the prisoner's counsel. It was held in that case that "The court has no more authority, under the law, to read over testimony to the jury, affecting the life or liberty of the defendant, in his absence, than it has to examine the witnesses in relation thereto, in his absence." A new trial was accordingly granted. The court merely treated the ground of the motion for a new trial as an irregularity, and not as a nullity. In *Martin* v. *State,* 51 *Ga.* 567, the defendant was indicted for simple larceny, and the court charged the jury the second time in the absence of the defendant and his counsel. This court did not treat the verdict of guilty as a nullity, but said: "As this important privilege was lost to the defendant in this case, and at a critical stage of the trial, through a mistake of the State's counsel, at least it is positively so stated by defendant's counsel, and doubtless the court was misled by it, we think there should be a new trial." In *Bonner* v. *State,* 67 *Ga.* 510, there was an indictment for murder, and a conviction for voluntary manslaughter. A motion for a new trial was made, which was overruled, and the defendant excepted. A new trial was granted by this court, it being held: "In a criminal case the prisoner has the right to be present in person throughout the trial. Therefore, for the judge to recharge the jury while the prisoner was absent and in confinement, although his counsel may have been present and kept silent, was error." In *Wilson* v. *State,* 87 *Ga.* 583 (13 S. E. 566), there was indictment and trial for murder, and a motion for a new trial. The trial court

recharged the jury in the absence of the defendant. This court held this to be cause for a new trial. And to the same effect, see *Tiller* v. *State,* 96 *Ga.* 430 (23 S. E. 825) ; *Hopson* v. *State,* 116 *Ga.* 90 (42 S. E. 412).

It will thus be seen that this court has held that a motion for a new trial is an available remedy in a case where, during progress of the trial of one charged with a felony, some step is taken by the court during the enforced absence of the defendant, without his consent; and in such case the verdict rendered against the defendant will not be treated as a nullity, but it will be set aside and a new trial granted. It will also be seen that, where a motion for a new trial is made, the defendant must set out in that motion all that is known to him at the time, or by reasonable diligence could have been known by him, as grounds for a new trial. Did the defendant in the instant case know, at the time he made his motion for a new trial, that he was absent without his consent when the verdict of guilty was rendered against him? He must of necessity have known it, and likewise his counsel. In one ground of his motion for a new trial (which was reviewed and passed on by this court in the case of *Frank* v. *State,* supra) it was alleged: "Defendant was not in the court-room when the verdict was rendered, his presence having been waived by his counsel." When one convicted of crime makes a motion for a new trial, it is his duty to include everything in it which was appropriate to such a motion and which was known to him at the time. As we have seen, the defendant could have made the question under consideration in the motion for a new trial. In *Daniels* v. *Towers,* 79 *Ga.* 785 (7 S. E. 120), a judgment of conviction for felony had been affirmed by the Supreme Court on writ of error brought by the defendant; and this court held that the legality of his conviction could not be brought into question by writ of habeas corpus sued out by him, save for the want of jurisdiction appearing on the face of the record as brought from the court below to the Supreme Court. In delivering the opinion of the court, Judge Bleckley said (p. 789) : "We rest the case upon the general rule that, after a judge of the superior court has presided in any case in the superior court of any county, and the judgment rendered at the trial has been affirmed by this court, it is to be taken for all purposes that it was a legal trial and judgment, and can not be questioned for anything but the want of jurisdiction appearing upon

48

the face of the proceedings as ruled upon here. If there is more record below, and the plaintiff in error after conviction does not bring it up, it is his own misfortune. He had an opportunity to bring it up. He must abide the judgment upon the record which he brings here; and if the judgment is legal according to that record, he must take the consequences. It will not do to allow him to bring up his case in sections, whether there is a trial of it by a court divided in sections or not; he must bring up his whole case as he expects to stand upon it for all time; and if he does not do it, neither he nor his friends can repair the error afterwards."

In support of his contention, the plaintiff in error cites Hopt v. People of Utah, 110 U. S. 574 (4 Sup. Ct. 202, 28 L. ed. 262). Hopt was tried on an indictment for murder, found guilty, and sentenced to suffer death. The judgment was affirmed by the Supreme Court of the Territory of Utah. Upon writ of error to the Supreme Court of the United States the judgment was reversed and the case remanded, with instructions to order a *new trial*. A statute of Utah provided: "If the indictment is for a felony, the defendant must be personally present at the trial; but if for a misdemeanor, the trial may be had in the absence of the defendant." The triors of the competency of the jurors, appointed by the court, conducted their examination of the jurors in a different room, and tried the grounds of challenge out of the presence as well of the court as of the defendant and his counsel. The Supreme Court of the United States, in construing the statute of Utah, said that under their construction the trial, by triors appointed by the court, of challenges of proposed jurors in felony cases must be had as well in the presence of the court as of the accused; and that such presence can not be dispensed with. But it will be observed that the decision was placed upon a construction of the statute of Utah which required the *personal* presence of the accused at every stage of the trial. It was said by Mr. Justice Harlan, who delivered the opinion, that "all doubt upon the subject is removed by the express requirement, not that the defendant may, but, where the indictment is for a felony, must be 'personally present at the trial.'" The absence of the defendant, however, was treated as an irregularity, as shown by the judgment remanding the case and ordering that a new trial be had. Ball v. United States, 140 U. S. 118 (11 Sup. Ct. 761, 35 L. ed. 377), was also relied upon. In that case it did not affirm-

atively appear from the record that the defendants were present when sentence was pronounced upon them. It was said that "At common law it was essential, in a trial for a capital offense, that the prisoner should be present, and that it should appear of record that he was asked before sentence whether he had anything to say why it should not be pronounced." The defendants were convicted of murder, and filed a motion for a new trial and a motion to arrest the judgment, both on the same date, but whether each along with the other motion is not clear. The case was remanded with direction to quash the indictment because it failed to show the time and place of death (140 U. S. 133). In delivering the opinion of the court Chief Justice Fuller said (p. 132): "We do not think that the fact of the presence of the prisoners can by fair intendment be collected from the record, no mention being made to that effect in the order, it not appearing therefrom that the sentence was read or orally delivered to them, and the usual questions not having been propounded." The Chief Justice further said: "We are clear that the indictment is fatally defective, and that a capital conviction, even if otherwise regular, could not be sustained thereon." While it seems to be the practice in the Federal courts, in capital felonies, that the record should show that the defendant was present and was asked whether he had anything to say why sentence should not be pronounced, it has never been the practice in this State "to enter on the record the fact that the prisoner and his counsel were present when the verdict was rendered, and when the sentence was pronounced, and from arraignment to sentence, or that the prisoner was asked, before sentence, whether there was any reason why sentence should not be pronounced upon him. The silence of the record as to such facts is, therefore, no cause for arresting the judgment or setting it aside." *Rawlins* v. *Mitchell,* 127 *Ga.* 24 (55 S. E. 958). See also *Nolan* v. *State,* 53 *Ga.* 137 (3).

Counsel for the defendant rely on the cases of *Nolan* v. *State,* 53 *Ga.* 137, and *Nolan* v. *State,* 55 *Ga.* 521 (21 Am. R. 284). In the former case the defendant was indicted for the offense of murder, and the jury found him guilty of voluntary manslaughter. When the jury were out and before the verdict was returned, counsel for the accused consented that if the jury agreed on a verdict that night they could return a sealed verdict to the clerk of the court and disperse. They did not agree that night, but did on the following day,

and their verdict was received in the absence of the prisoner and his counsel. The defendant made a motion in arrest of judgment, on the ground that the consent extended only in case of agreement that night and not to the next day. It was held: "Consent of counsel that should the jury agree that night, they might return a sealed verdict to the clerk and disperse, can not be construed to extend to a verdict found on the next day. It was the legal right of the defendant to be present when the verdict was rendered, and had a motion to set aside such verdict been made on the ground of his absence, it should have been granted." By the motion in arrest of judgment the defendant sought to arrest the judgment as a nullity. But the court said that no motion under section 4629 of the Code then in force could be sustained for any matter not affecting the real merits of the offense charged in the indictment. The judgment of the court below, overruling the motion in arrest of judgment, was therefore affirmed. The court also said, "That it was the legal right of the defendant to have been present when the verdict was rendered by the jury, we entertain no doubt; and if a motion had been made to set aside the verdict on account of his absence, the motion should have been granted by the court." This last statement, from an examination of the record, is obiter. But what was probably meant by a motion to set aside was in the sense of being a motion for a new trial, as such motions have been likened to motions in arrest and to set aside. See *Prescott* v. *Bennett*, 50 *Ga.* 266-272, where Judge Trippe said: "It is true that a motion, entitled a motion to set aside, is sometimes made for matters extrinsic the pleadings or record. In such cases, they are practically more to be likened unto motions for new trials, and substantially are the same in form and effect." This is probably what Judge Warner meant by the obiter expression quoted above from the *Nolan* case; for, from the cases cited in which opinions were delivered prior to that utterance, it will be seen that a motion for a new trial was an available remedy in such cases; and it will be noted, too, that Judge Warner presided and delivered the opinion of the court in the *Prescott* case, in which Judge Trippe used the language quoted above in his concurring opinion. In the *Nolan* case reported in 55 *Ga.* 521, Nolan was placed on trial for the offense of murder. Evidence was submitted to the jury, argument had, and a charge delivered by the court. Subsequently, while the defendant was con-

fined in jail, in the absence of his counsel, and without his consent, the jury returned a verdict finding him guilty of voluntary manslaughter, and were discharged. The defendant, at a subsequent term, moved to set aside the verdict rendered against him, on the ground that it was rendered and published in his absence and without his right of being present having been waived. The trial court ordered accordingly. Subsequently the defendant was arraigned again upon the same indictment, and he pleaded specially in bar these facts as constituting his having been placed once in jeopardy, and claimed his discharge. This court held, that "A verdict so received having been, on his motion, set aside as illegal, when afterwards arraigned for trial on the same indictment for the offense, before another jury, the prisoner may plead specially his former jeopardy in bar of a second trial, and if supported by the record and the extrinsic facts, the plea should be sustained, and thereupon the prisoner should be discharged." It will be observed that the defendant in the *Nolan* case treated the verdict as a nullity and made a motion to set it aside as such, which was done, instead of making a motion for a new trial and setting up his defense as an irregularity, and seeking a new trial because of some error committed at the trial. In the latter case, he would waive the fact that the verdict was a nullity, but insist that it was merely irregular or erroneous, requiring a new trial. Judge Bleckley, delivering the opinion in the last *Nolan* case, said: "One trial, and only one, for each crime, is a fundamental principle in criminal procedure, and must be the general rule practically administered in all free countries. For the public authority, whether king or commonwealth, to try the same person over and over again for the same offense, would be rank tyranny. . . Though some exceptions to the general rule are to be admitted, as when a new trial is had on the prisoner's motion, or when judgment upon a void indictment has been arrested, the transcendent importance of the rule itself requires that the exceptions should be few and strictly guarded."

In the instant case, the defendant made a motion for a new trial, which was overruled by the court (paragraphs 6 and 7 of defendant's motion; also *Frank* v. *State,* supra), thus treating the verdict not as a nullity, but as an irregularity. In *Smith* v. *State,* 59 *Ga.* 513 (27 Am. R. 393), it was held that although the prisoner be in custody, he may consent that the verdict shall be received in

his absence, and that a verdict thus received is valid, notwithstanding he was at the time confined in jail. The facts in this case were somewhat similar to the *Nolan* case, as to the agreement. The court said: "He ought to have been brought from the jail, so as to be present at the reception. But we think it was merely an irregularity, and that no matter of substance was involved. Having surrendered his right to poll the jury, no other of any value to him remained, for the exercise of which his presence was important. Had he been in court, the result must have been the same as it was. Nothing took place in his absence, but the mechanical act of receiving the verdict, as the consent had provided it should be received. If he had been present, the act would have been no less mechanical. In *Nolan's* case (53 *Ga.* 137, 55 *Ib.* 521), the event contemplated did not happen." We conclude from these authorities that the question here raised could have been adjudicated under a motion for a new trial; and that a failure to include this ground in such motion would preclude the defendant, after the denial of the motion and the affirmance of the judgment by this court, from seeking to set aside the verdict as a nullity.

3. The motion to set aside the verdict complains of the reception of the verdict in the involuntary absence of the defendant while he was incarcerated in jail, and in the absence of his counsel. Paragraph 2 of the motion avers, that he did not waive that right, nor did he authorize any one to waive it for him, nor did he consent that he should not be present; that he did not know that the verdict had been rendered and the jury discharged until after the reception of the verdict and the discharge of the jury; and that he did not know of any waiver of his presence made by his counsel until after sentence of death had been pronounced upon him. Paragraph 3 of the motion alleges that on the day the verdict was rendered, and shortly before the judge who presided on the trial of the case began his charge to the jury, the judge privately conversed with two of the counsel for the defendant, and in the conversation referred to the probable danger of violence to the defendant and his counsel if he or they were present when the verdict was rendered and it should be one of acquittal, and after the judge had thus expressed himself he requested counsel to agree that the defendant should not be present at the time the verdict was rendered and the jury polled; that under these circumstances counsel did agree with

the judge that the defendant should not be present at the rendition of the verdict, and he was not present at the rendition of the verdict, nor were his counsel present. It is contended that it is the constitutional right of the defendant to be present at every stage of the trial, and that he can not waive that right, nor can his counsel waive it for him, and that his absence at the reception of the verdict vitiates the whole trial.

It is the undoubted right of a defendant who is indicted for a criminal offense in this State to be present at every stage of his trial. But he may waive his presence at the reception of the verdict rendered in his case. In *Cawthon* v. *State,* 119 *Ga.* 395 (46 S. E. 897), a waiver was made by the defendant's counsel in his presence, as to his personal presence at the reception of the verdict. This court held in that case: "Even if an attorney, by virtue of the relation of attorney and client existing between himself and one charged with a felony, has no implied authority to waive the right of his client to be present at the reception of the verdict, if the attorney makes an express waiver to this effect in the presence of the client, who does not at the time repudiate the action of his counsel, a verdict afterwards received in the absence of the accused and in consequence of the waiver will not be held to be invalid at the instance of the accused, seeking, after the reception of the verdict, to repudiate the action of his counsel in making the waiver. Before a verdict received in the absence of the accused will be held to be invalid, it is incumbent upon the accused to show that he was in custody of the law at the time the waiver was made, that he made no waiver of his right to be present, and that he did not authorize his counsel to make such waiver for him, and, if an unauthorized waiver has been made by counsel, that he has not ratified the same or allowed the court to act upon the waiver of counsel after he has notice that the same has been made." Judge Cobb, who delivered the opinion of the court in the *Cawthon* case, after citing a number of authorities pro and con, said (p. 413): "These decisions seem to draw no distinction between a waiver made by counsel in the presence of his client and one made in his absence. While counsel may have no implied authority, growing out of the relation of attorney and client, to make a waiver of this character for his client in his absence, we can see no good reason why the accused would not be bound by an express waiver made in his presence. Such a waiver is to all

intents and purposes the waiver of the client. It would be trifling with the court to allow it to act upon a waiver thus made, and then impeach its action on the ground that counsel had been guilty of an unauthorized act. And while we recognize fully that there are limitations upon the authority of counsel, the client, even though he be charged with a capital felony, should not be allowed to impeach the authority of his counsel, when he acts in his presence, unless he promptly repudiates the unauthorized act before the court bases action upon it. Speaking for myself, I am inclined to the opinion that the right to make the waiver resides in the counsel, whether the accused be present or not at the time of the waiver, his authority arising from the mere relation of attorney and client. The reasoning of the courts that hold to the contrary is not, in my opinion, satisfactory or by any means conclusive. Counsel is generally much better able to take care of the rights of the accused than he is himself, and the accused is better protected from improvident waivers by his case being left to the control of his counsel than if he were to take charge of the same in his own behalf." As said by this court, in effect, in the case of *Lampkin* v. *State,* 87 *Ga.* 517 (13 S. E. 523), it is not sound practice for counsel to make a waiver of their client's presence at the reception of the verdict, take the chances of acquittal for their client, and then, after verdict of guilty, for the defendant to be allowed to repudiate the action of counsel, and employ other counsel to set aside the verdict because of the absence of the defendant at the time it was rendered. Who was better prepared to protect the interests of the defendant, trained and expert counsel, or the defendant himself? True, he had the right to conduct the trial in person, if he so desired; but the defendant had committed his case to able and experienced counsel, who in the exercise of their relation as attorney to the client waived his right to be present; and they having made the waiver, and defendant by his conduct having acquiesced in it, he should be bound by it.

In the instant case the defendant, in his motion to set aside the verdict as a nullity, says that he did not know of the waiver of his presence made by his counsel. After the verdict of guilty was rendered against him in the trial court, the defendant made a motion for a new trial on various grounds; and the motion having been overruled, a writ of error was sued out to this court, and the

judgment of the lower court was affirmed. See *Frank* v. *State,* supra. The 75th ground of that motion contains the following recital, among others, "The defendant was not in the court-room when the verdict was rendered, his presence having been waived by his counsel." We pause here long enough to say that this court will take judicial notice of its own records, and will of its own motion, or at the suggestion of counsel, inspect the records of this court in a former appeal of the same case. *Strickland* v. *Western & Atlantic R. Co.,* 119 *Ga.* 70 (45 S. E. 721); Dimmick *v.* Tompkins, 194 U. S. 540, 548 (24 Sup. Ct. 780, 48 L. ed. 1110), and authorities there cited; Mississinewa Min. Co. *v.* Andrews, 28 Ind. App. 496 (63 N. E. 231); Culver *v.* Fidelity & Dep. Co., 149 Mich. 630 (113 N. W. 9); Studabaker *v.* Faylor, 52 Ind. App. 171 (98 N. E. 318); Mayhew *v.* State (Tex. Crim.), 155 S. W. 191 (5); South Fla. Lumber &c. Co. *v.* Read, 65 Fla. 61 (61 So. 125); Bohanan *v.* Darden, 7 Ala. App. 220 (60 So. 955); Alabama &c. R. Co. *v.* Bates, 155 Ala. 347 (46 So. 776); McNish *v.* State, 47 Fla. 69 (36 So. 176); Westfall *v.* Wait, 165 Ind. 353 (73 N. E. 1089, 6 Ann. Cas. 788); 1 Chamberlayne's Modern Law of Evidence, § 683, p. 850.

The motion under review recites that "the said judge, Hon. L. S. Roan, upon considering the motion for new trial made by this defendant, after the reception of said verdict as above stated, rendered his judgment denying said motion, and in rendering said judgment stated that the jury had found the defendant guilty," etc. When, therefore, the defendant by motion for a new trial invoked from the court a ruling upon alleged errors that had been committed upon the trial (reciting on the face of the motion a knowledge of his absence when the verdict was returned, and the waiver of his presence), he will not now be heard to say that the verdict was a nullity on account of his not being present at its rendition, after the motion for a new trial has been denied and the judgment denying it affirmed by this court. *Frank* v. *State,* supra. And moreover an extraordinary motion for a new trial was made, and has likewise been refused, and the judgment overruling it affirmed by this court. *Frank* v. *State,* 142 *Ga.* (83 S. E. 233). He had the right to invoke a ruling on that question in the motion for a new trial, and, failing to do so, he can not now be heard to say that he will treat the verdict as a nullity and move to have it set aside as

such.  It would be a reproach upon the court's administration of the law to allow a defendant to make a motion for a new trial, with a knowledge of his absence when the verdict against him was rendered, and have the grounds of the motion adjudicated by the court, and then move to set the verdict aside as void.  The defendant necessarily knew, when sentenced by the court (for he was then present), that the verdict had been rendered against him.  His counsel must have known it, for they filed his motion for a new trial. He and they are presumed to know the law.  His motion for a new trial recited that his presence at the reception of the verdict had been waived by his counsel.  Under these circumstances, it must be held that the defendant acquiesced in the waiver by his counsel of his presence at the reception of the verdict.  It would be trifling with the court to allow one who had been convicted of crime, and who had made a motion for a new trial on over a hundred grounds, including the statement that his counsel had waived his presence at the reception of the verdict, to have the motion heard by both the trial court and the Supreme Court, and, after a denial by both courts of the motion, to now come in and by way of a motion to set aside the verdict include matters which were or ought to have been included in the motion for a new trial.  While a defendant indicted for crime in this State has the legal right to be personally present at every stage of his trial, as before stated, there are certain matters which he may waive, and which many prisoners do waive at their trial.  They may waive copy of indictment, formal arraignment, and list of witnesses before the grand jury, all of which are important rights.  They may waive a preliminary hearing before a committal court, a jury of twelve to try them, or any legal objection to jurors who have qualified on their voir dire; they may even waive trial entirely, plead guilty of murder and be sentenced to hang. *Sarah* v. *State,* 28 *Ga.* 576 (2), 581; *Wiggins* v. *Tyson,* 112 *Ga.* 745, 750 (38 S. E. 86).  These are rights personal to the defendant; and it would be absurd to say that where his counsel waived his presence at the reception of the verdict, and this waiver has been brought to his attention in ample time for him to move for a new trial on that ground, which he fails to do until after he makes a motion for a new trial on other grounds, with knowledge of the fact of his absence when the verdict was rendered, and then, after the motion so made has been finally adjudicated against him, he can

successfully move to set aside the verdict as a nullity. We may add that the allegations of the petition show that at the rendition of the verdict the jury was polled by the court, under an agreement had with defendant's counsel when the waiver was made. In this State, after a verdict of guilty of murder and the overruling of a motion for a new trial, a writ of error will lie to this court, assigning error on the overruling of the motion. In some jurisdictions the practice is different. But on examination of the cases in other jurisdictions, in which a complaint of the reception of a verdict in the absence of the accused was made and sustained, it will be found that very commonly this was treated as a ground for remanding the case for another trial. We know of no provision in the constitution of the United States or of this State, and of no statute, which gives to an accused person a right to disregard the rules of procedure in a State, which afford him due process of law, and to demand that he shall move in his own way and be granted absolute freedom because of an irregularity (if there is one) in receiving the verdict. If an accused person could make some of his points of attack on the verdict, and reserve other points known to him, which he could then have made, to be used as grounds for further attacks on the verdict, there would be practically no end to a criminal case.

4. Comparing the grounds of the motion to set aside the verdict in this case, on the grounds of disorder in the court-room during the progress of the trial, of cheering and applause outside the court-room, and of the oral remarks of the trial judge before signing the order denying a new trial, with the grounds of the motion for a new trial made in the former record in this case (see *Strickland* v. *W. & A. R. Co.*, supra), when it was here under review upon the denial of that motion (*Frank* v. *State*, 141 *Ga.* 243), it will be seen that the questions there made as to these matters were substantially the same as those sought to be raised by the present motion, and the questions there raised were adjudicated by this court in that case adversely to the contentions of the defendant. This court, therefore, will not again consider those same questions when sought to be raised by the motion to set aside the verdict now under review.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*