## WIGGINS *v.* TYSON.

1. Where the sureties on a bond given to supersede a sentence to imprisonment in the penitentiary, pending a writ of error, surrender their principal, who is taken into custody by the sheriff, they are thereafter relieved from further liability on such bond, without regard to the reasons which induced the surrender. Even if the person so surrendered should thereafter make it appear that he was surrendered under a mistake of fact and illegally confined in the penitentiary, he should not, on a legal inquiry into the cause of his detention therein, be remanded to the custody of such sureties.

2. One who has been duly tried, convicted, and sentenced to imprisonment in the penitentiary by a superior court, and, pending a writ of error, has superseded his sentence, may, after affirmance of the judgment of the superior court and pending the reception of the remittitur, lawfully waive such reception and further action thereon by the superior court, and voluntarily enter on his term of imprisonment. If he does so, his confinement in the penitentiary thereafter is legal.

Argued January 21,—Decided February 25, 1901.

Habeas corpus.   Before Judge Smith.   Wilcox superior court. November 12, 1900.

*Hall & Wimberly* and *J. W. Preston*, for plaintiff.   *J. M. Terrell, attorney-general*, and *J. F. DeLacy, solicitor-general*, contra.

LITTLE, J.   Martha Wiggins petitioned the judge of the superior court for the writ of habeas corpus, alleging that P. H. Wiggins, her son, was wrongfully and unlawfully detained in one of the divisions of the Georgia penitentiary, located in Wilcox county. The writ was issued and a hearing had.   It appears from the answer of the warden having charge of the prisoner, as a justification of the detention, that Wiggins, at the September term, 1899, of the superior court of Putnam county, was indicted and tried for the offense of murder, that he was convicted of voluntary manslaughter, and sentenced to imprisonment for a term of fifteen years in the Georgia penitentiary.   The answer further sets up that Wiggins, after conviction and sentence, made a motion for a new trial, which was overruled; that he excepted and brought his case to this court, which affirmed the judgment of the court below; and that after such affirmance, and before the remittitur which transmitted the judgment of this court was received by the clerk of the superior court of Putnam county, Wiggins voluntarily surrendered himself to the sheriff to be taken to the penitentiary in compliance with the sentence passed upon him.   It is made by the evidence to appear that, at the time of suing out his bill of exceptions, Wiggins entered into a bond with proper sureties, in terms of the statute, and superseded the execution of the sentence passed upon him.   On the hearing the sheriff testified that he received a telegram from the chairman of the Prison Commission, stating that, if Wiggins desired to commence his time, he, the sheriff, might take him to the State farm; that after receiving the telegram he had an interview with Wiggins and two of the sureties on his bond; that he showed Wiggins and

these sureties this telegram; that Wiggins stated to him he had
wound up his business affairs and had nothing to do, but was wait-
ing for the remittitur from the Supreme Court, and that he believed
he would go on and, as he expressed it, "put in my time." The wit-
ness told Wiggins, if he desired to do so, to meet him on the early
train next morning, and that he would go with him to the State
farm. He distinctly told Wiggins that it was entirely optional with
him to go before the remittitur had been received. The next morn-
ing by three o'clock Wiggins came to his house and waked him up.
They went up town and from there to the train, and went together
to the State farm, where he turned Wiggins over to the authorities in
charge. This was after the affirmance of the judgment by the
Supreme Court, of which judgment Wiggins was informed. It was
understood by his bondsmen that the latter could hold him pend-
ing the arrival of the remittitur, or turn him over to the sheriff, as
they saw fit. Wiggins, on the contrary, testified that he did not
voluntarily surrender himself to the sheriff; that the latter came to
him and stated that he had a telegram from Judge Turner to take
him to the prison farm; that he told the sheriff he would have to
go; that his sureties told the sheriff they would deliver him next
morning; that he supposed the sheriff had legal authority to de-
liver him to the penitentiary authorities. The two sureties on the
supersedeas bond, present at the interview, corroborated Wiggins,
and stated that at the instance of the sheriff they agreed to deliver
Wiggins to him the next morning to be taken to the penitentiary,
and did so; that they supposed the officer had legal authority and
necessary papers to take him to the penitentiary. At the conclu-
sion of the hearing the judge passed an order remanding Wiggins
to the custody of the sheriff of Putnam county, and ordered him
detained in the jail of that county till the remittitur of the Supreme
Court had been received and made the judgment of the superior
court of Putnam county, etc. To this ruling petitioner excepted.

The only ground urged in this court for a reversal of the judg-
ment is, that, having superseded the execution of the sentence im-
posed upon him and sued out a writ of error to the Supreme
Court, Wiggins was as a matter of law placed in the custody of the
sureties on his supersedeas bond, where he was entitled to remain
until the Supreme Court had decided his case and returned official
notification of its action to Putnam superior court, and the judg-

ment of affirmance by the Supreme Court never having been made the judgment of the superior court of that county, nor entered on its minutes, he was legally in the custody of his bail, and was entitled so to remain until these proceedings were taken; that this had never been done, and therefore he should have been discharged from the custody of the penitentiary authorities, and delivered into the custody of his bail. Counsel for plaintiff in error submits, that when the sentence was superseded no steps could have been legally taken to enforce it until the remittitur was entered on the minutes of the superior court; that until this was done the sentence and judgment was not complete, and there was no legal authority to seize and deliver Wiggins to the penitentiary authorities. An analysis of the judgment rendered indicates that the trial judge determined as a matter of law that Wiggins had been prematurely confined in the penitentiary. There are no words in the judgment from which we can infer that he passed on the question of fact whether Wiggins had waived, or could have legally waived, his right to have the judgment of this court, which denied him a new trial, made the judgment of the superior court of Putnam county. It is possible that he might have considered that question and determined either that no such waiver was made, or, if made, that it did not have the effect of rendering his confinement in the penitentiary legal. But we are justified, from the minuteness of the instructions given in the order to the officers of the superior court of Putnam county, and by the absence of all reference to the question and legal effect of the waiver claimed, to deal with the order remanding Wiggins to the custody of the sheriff of Putnam county as a ruling that the imprisonment was illegal in any event, because Wiggins was delivered before the remittitur had been sent down. We do not think, in any view of the evidence, that Wiggins should have been remanded to the custody of the sureties who signed his supersedeas bond. Such a bond is enforceable by forfeiture for non-appearance of the principal under the general provisions laid down in the code (*Robinson* v. *Gordon*, 85 *Ga.* 559), and the sureties on such a bond have the privilege of surrendering their principal in discharge of their liability as is provided in section 935 of the Penal Code. Whether Wiggins did or did not voluntarily go with the sheriff to the penitentiary to commence the term of imprisonment prescribed by his sentence, no other conclusion can be

reached from the evidence than that his sureties did surrender him to the sheriff. Wiggins so testified in effect. Preston and Lawrence, two of the bondsmen, so testified in words. It is true that the reason given for the surrender was that Wiggins and his bondsmen supposed that the sheriff had legal authority to take and carry Wiggins to the penitentiary. It matters not what reasons may actuate a surety in the surrender of his principal; if he in fact surrenders him, and such surrender is made in the manner provided by law, without regard to his reasons or the motives which actuated him, the surety is discharged from further liability on the bond. Therefore, when Wiggins went into the custody of the sheriff on the morning of the day he was carried to the prison farm, as we understand the agreement between the sheriff and the two sureties, he was no longer in their custody nor were they thereafter bound to produce him, and the trial judge did not err in refusing to remand him to the custody of his former sureties. If Wiggins could not waive his legal right to have the judgment of this court entered in the superior court of Putnam county, or as a matter of fact did not waive it, then when, under the agreement made with the sureties, Wiggins came to him to be carried to the penitentiary, it would have been the duty of the sheriff to confine him in jail to await the transmission of the judgment of this court.

We do not altogether agree with counsel for plaintiff in error as to the effect of a supersedeas. When Wiggins made a motion for a new trial, and excepted in the manner prescribed by law to the judgment overruling it, and superseded the judgment or sentence in his case by the execution of the bond provided by the Penal Code in such cases, the supersedeas did not have the effect of in any way impairing the judgment or sentence or rendering the same illegal, but its only effect was to postpone its operation. When the judgment overruling the motion for a new trial was affirmed by this court, the legality of his trial and sentence was finally adjudicated, and all questions which were or could have been made, touching the legality and correctness of his conviction, were determined against him. The method of conveying to the superior court in which he was convicted the information that this court had affirmed its judgment was by a remittitur, the transmission of which is regulated by statute and the rules of this court. It is true that until this writ is received the superior court can take no

further action. *Lyon* v. *Lyon*, 103 *Ga.* 747. But it is neverthe-
less true that after affirmance here nothing then stands between
the convict and the execution of his sentence but the transmission
of this writ and the order of the judge. It is claimed by counsel
for plaintiff in error that it is contrary to public policy to allow a
defendant charged with a crime which involves his liberty to waive
his sentence or judgment, and a number of cases were cited to
support this position; but, however this may be, that principle is
not involved in this case. If Wiggins did in fact make a waiver,
it was not a waiver of his sentence nor of the judgment pronounced
against him, but a waiver of the formal transmission and entry of
a writ which would put his legal sentence in process of execution.
Nor could such a waiver be construed as a waiver of anything that
was essential to a valid sentence or judgment, because, as we have
seen, there was no invalidity about either, but only a question as
to when the term of imprisonment would commence. It is further
urged, however, that one who is charged with a crime involving
life or liberty waives nothing by implication or intendment. The
authority cited to support this proposition refers entirely to a
waiver, during the progress of the trial, of a right to which the ac-
cused is entitled. In the particular case claimed as authority, the
jury, which had retired to consider the case, was called back into
court and recharged by the judge in the absence of defendant's
counsel. He was therefore deprived of the important right, guar-
anteed by the constitution, that he should have the privilege and
benefit of counsel. The waiver which counsel for the State claimed
had been made in that case was a statement made by the State's
counsel that counsel for defendant had waived everything. Author-
ity is also cited for the proposition that a defendant who is charged
with a crime involving his liberty is not held to have waived any-
thing, unless he does it by express agreement. *Hoye* v. *State*, 39 *Ga.*
718. In that case, however, it appears that the term of the court
at which defendant was tried, convicted, and sentenced was ille-
gally held, and the waiver which the State's counsel claimed was
made was the fact that the accused went to trial without objection.
In the first of these cases there was no evidence of any waiver. In
the one last referred to it was not shown that the accused had any
knowledge that the term of the court was any other than a legal
term; and in both, the rulings made referred to waivers by im-

plication, during the progress of a trial. In the case at bar the trial had been had, the accused convicted, and sentence passed. After his motion to set the verdict aside and grant him a new trial had been refused, which fact (as the sheriff testified) Wiggins knew, and nothing remained but to put the sentence in process of execution, which could not be legally done until the remittitur had been received and the judgment of this court made the judgment of the court which tried him, we know of no rule of law or reason why, for his own benefit, when the interest of no one else was concerned, he could not legally waive the time necessary for the reception of the remittitur and voluntarily enter upon his term of imprisonment. Such a course on his part would sooner terminate the time of his imprisonment, and, instead of having the effect of taking away any right given for his benefit, the waiver inured to his benefit.

One may even waive his right to a trial, and under his plea of guilty be imprisoned. It is true that such waiver must be an express one, but when made, the waiver is of a constitutional right. Mr. Bishop, in his work on Criminal Law, § 995, declares that there are few exceptions to the rule that a party in a cause may waive any right which the law has given him, even a constitutional one. In the case of People *v.* Robinson, 46 Cal. 94, it was expressly ruled that the defendant in a criminal case may waive the time which the Penal Code allows after conviction before sentence can be pronounced, and may consent that judgment be pronounced immediately. It appeared in the report of that case that the law of California prescribed that no sentence should be pronounced within a given time after conviction. In the case of *Sarah* v. *State*, 28 *Ga.* 576, it was ruled that as a prisoner might waive even a trial itself, and be capitally punished, he might waive every minor right or privilege. It is declared in section five of our Penal Code that "a person may waive or renounce what the law has established in his favor, when he does not thereby injure others or affect the public interest." So much for the binding effect of a waiver. If the evidence of the sheriff is true, Wiggins did waive the reception of the remittitur. If he did, we rule that it was binding upon him and he was legally in the penitentiary. There is no contest as to the manner in which the waiver was made. It is denied that any was made, but if made, according to witnesses who assert that it was, it was an express waiver, not one by implication. We have said thus

much of the question of waiver, because in our judgment it was an important fact to be established, on the hearing of the writ of habeas corpus, whether the waiver claimed to have been made was or was not made. If made, then the effect of it was, as we have said, to render the imprisonment legal. If not, imprisonment in the penitentiary was legal only after the judgment of this court had been made the judgment of the superior court of Putnam county, and Wiggins should not have been taken to the penitentiary until this was done. Inasmuch as, from our construction of the order remanding Wiggins to the custody of the sheriff until the remittitur had been received, the question of waiver was not passed on by the trial judge, we reverse the judgment, with direction that if at the hearing it shall appear that the remittitur has been received and made the judgment of the superior court of Putnam county, Wiggins be remanded to the custody of the warden of the Georgia penitentiary having him in charge; that if such remittitur has not been received and made the judgment of the court, and evidence is again offered on the question as to whether he waived the reception of the remittitur, that question be considered and the fact determined by the trial judge, and the further custody of Wiggins be controlled by the principles of law above set out.

*Judgment reversed, with direction. All the Justices concurring, except Cobb, J., absent.*