## GLOVER *v.* THE STATE.

1. It is permissible to prove, as part of the res gestæ, that the accused successively fired upon two persons, although he was on trial for the murder of the person whom he wounded when he fired the first time.
2. To render a dying declaration admissible in evidence, the circumstances attending the making of the statement must be such as to show that the declarant was in articulo mortis and conscious of his condition. The court did not err in excluding the alleged dying declaration on the ground that the necessary preliminary proof was not made, and that the expected answer contained no assertion as to who killed him, but that "he laid the killing on some one else."
3. It is not competent to prove a statement by one of the parties who was shot, and who was sworn as a witness for the State, to the effect that he did not wish the defendant hurt for his act. Even if evidence of this character be admissible for the purpose of impeachment, it was not admissible in this case, as the necessary foundation for impeachment by contradictory statements was not laid.
4. The practice of instructing the jury in the language of the code section as to the effect to be given to the defendant's statement is to be commended.
5. The charge of the court, to the effect that if a person shoots at another with malice and by accident kills a third person, the crime is murder, was neither confusing nor inapplicable.
6. Other assignments of error are without merit. The evidence supports the verdict.

NOVEMBER 14, 1911.

Indictment for murder. Before Judge Whipple. Crisp superior court. July 4, 1911.

*J. W. Dennard* and *Pearson Ellis,* for plaintiff in error.

*T. S. Felder, attorney-general, W. F. George, solicitor-general,* and *Crum & Jones,* contra.

EVANS, P. J. Kid Glover was convicted of the murder of Charlie West, and sentenced to be hanged. The killing occurred shortly after midnight, at the home of one Willie Royal. The evidence for the State made substantially the following case: There

was a "supper" in progress in the home of Willie Royal. The defendant, in company with one Isom Crumley, and armed with a shotgun and a pistol, came to the house about midnight. Crumley had in his pocket several loaded gun-shells. Sometime thereafter the deceased, Charlie West, began to curse, and Sammy Royal asked him not to curse in the house. Charlie West then went out on the porch and again began to curse. Sammy Royal, Garfield Royal, Charlie West, and others were at that time on the porch and out in the yard at a fire in front of the house. Willie Royal came out of the house and told the deceased not to curse at his house; that he didn't want to have any fuss, and would break up the frolic before he would have any fuss. They engaged in heated conversation, and the deceased struck Willie Royal with his pistol. Garfield Royal then grabbed Charlie West, the deceased; and at this time Kid Glover, who was standing about ten feet from them toward the other end of the porch, shot the deceased. In the scuffle between the deceased and the Royals the deceased's pistol fired, immediately before the defendant shot. The defendant then turned and shot Garfield Royal, who had jumped off of the porch onto the ground. The defendant then got some shells from Isom Crumley, reloaded his gun, and threatened to shoot Willie Royal, declaring that he had come there, not to kill one, but to kill a "whole damn thousand," etc. The deceased was shot in the leg, and Garfield Royal in the arm, both wounds having been inflicted with a shotgun. The defendant contended that he did not shoot the deceased at all, but that he was shot by Garfield Royal; and that the only shot fired by the defendant was when he shot Garfield Royal, after the latter had shot Charlie West and jumped from the porch. The defendant made a motion for new trial, complaining of the admission of certain evidence and of the court's charge. The motion was overruled.

1. Complaint is made that the court should have restricted the evidence to the shooting of the decedent and should have repelled testimony that immediately after the accused shot the deceased he also shot and wounded another person. The shooting of the deceased and the other person was part of the same transaction, and admissible under the rule of res gestæ. Indeed, the evidence authorized an inference that the accused really intended to shoot Garfield Royal in the first instance when he fatally wounded the

decedent, and when Royal jumped from the veranda the accused fired upon him, inflicting a serious wound.

2. The deceased was shot in the leg with a shotgun. Soon after receiving his wound he was placed in a buggy for the purpose of being carried to a doctor. While en route he said, "I am in bad condition," and shortly thereafter he died from loss of blood before reaching the physician. A witness was asked, "What was the conversation that took place between him and Kid at that time?" referring to a conversation alleged to have taken place while the party were in the buggy. Upon objection being made that the proper foundation had not been laid for the admission of any statement by the decedent as a dying declaration, counsel for the accused stated to the court, that, while he could not prove the decedent said he was in a dying condition, he expected to show that the decedent "laid the killing on some one else," and that the jury could infer from that whether or not it was a dying statement. The evidence was excluded. While it is not essential to show that the declarant affirmatively said he was in a dying condition, to render a dying declaration admissible in evidence, yet it must appear from the attendant circumstances that the declarant was in articulo mortis and conscious of his condition at the time of making the declaration. Penal Code (1910), § 1026. We think the testimony falls short of this requirement. The decedent was shot in the leg, and death was caused by loss of blood, and the evidence discloses no utterance or act by him or the other persons with him indicating any appreciation of the probable fatality of the wound. There is no fact brought out in the evidence which would serve to show that the decedent believed that death was imminent at the time of making the alleged statement. Besides, the answer which the court was apprised the declarant would make was that he "laid the killing on some one else," and this was too indefinite. It was not the statement of a fact as to who killed him.

3. The court refused to allow testimony that Garfield Royal, who was shot by the accused and who testified in behalf of the State, said that he did not want the accused hurt. The testimony was not offered for the purpose of impeachment, as no foundation was attempted to be laid. The desire of a witness that the defendant be acquitted is totally irrelevant.

4, 5, 6. Other rulings on points made in the record appear in

the headnotes. The evidence supports the verdict, which has the approval of the trial judge; and none of the assignments of error are meritorious.

*Judgment affirmed. All the Justices concur, except Beck, J., absent, and Hill, J., not presiding.*