## SWAIN *v.* THE STATE.

1. A juror who is opposed to capital punishment, regardless of what may be his opposition to this mode of punishment, is incompetent to try a case in which capital punishment may be inflicted.
2. The testimony to which objection was made in the second and fifteenth

Criminal Law, 16 C. J. p. 575, n. 61; p. 576, n. 73; p. 836, n. 34; p. 867, n. 25, 27; p. 870, n. 52; p. 875, n. 19; p. 878, n. 35; p. 950, n. 1; p. 952, n. 16, 18; p. 973, n. 93, 94; p. 1043, n. 36; p. 1045, n. 39; p. 1117, n. 81, 83, 84, 85; p. 1199, n. 56; p. 1202, n. 68, 70; p. 1229, n. 61; 17 C. J. p. 188, n. 60; p. 189, n. 79, 87; p. 209, n. 85; p. 210, n. 94; p. 255, n. 53; p. 317, n. 10.

Homicide, 30 C. J. p. 179, n. 37; p. 180, n. 42; p. 226, n. 15, 18, 21; p. 246, n. 88; p. 336, n. 79; p. 346, n. 85, 86, 88; p. 364, n. 83; p. 370, n. 30; p. 399, n. 51; 409, n. 34.

Juries, 35 C. J. p. 354, n. 34; p. 357, n. 67, 70.

grounds of the motion for a new trial was admissible as a part of the res gestæ, and to, show motive.

3. It was not error to exclude testimony as to an alleged statement of the deceased, to the effect that he had "made away with" money of the defendant, it not being made to appear that the defendant was informed of the statement or aware of the alleged theft.

4. The admission of the evidence of which complaint is made in the fourth ground of the motion was not error, because it was competent in rebuttal of testimony introduced in behalf of the defendant.

5. The admission in evidence of the license authorizing the marriage of the deceased and a witness for the State, as well as the certificate from the War Department of the service record of the defendant, affords in this case no ground for the grant of a new trial.

6. As a general rule, the right to object to an abridgement or denial of the right to a fair and orderly trial, or to protest any occurrence which may infringe upon this right or tend to prejudice the cause of one accused of crime, must be asserted at the first opportunity after the occurrence. The failure of the defendant to immediately call the attention of the court to a known violation of rights whereby he may be deprived of a lawful trial may be treated as a waiver of the right to object, and authorize the implication that he elects to take the chances, before the jury empaneled, of an acquittal in the trial then pending, rather than face the consequences of another trial should a mistrial be declared. In this State one accused of crime may at his option waive any right guaranteed him by law.

7. "It is not error in the court to state a fact as a fact to the jury which is admitted by counsel in defense and on which there is no issue." In the present case, it being admitted that the defendant shot and killed the deceased, the instruction, "The killing in this case would be murder if the jury should find that it was [for] the purpose of avenging some past wrong; the law being that a man has no right to take the law in his own hands and avenge a past wrong by killing a person that he thinks guilty of such wrong, whether it be a real wrong or a fancied wrong, and that would be true regardless of the nature of the wrong, however heinous the wrong may be," is not subject to exception as an expression or intimation of opinion upon the evidence, when the excerpt is considered in connection with its context. Nor can the exception that such charge is not authorized by the evidence be sustained.

8. The accused having requested, in advance of the charge of the court, instructions upon the subject of insanity, is estopped to except to a correct charge upon that subject upon the ground that there was no evidence to support such instructions.

9. In the absence of testimony tending to show that the will of the accused was overmastered by a delusion, it was not error to decline to instruct the jury on "the law of delusional insanity."

10. The court did not confuse the law of voluntary manslaughter with the law of justifiable homicide as embodied in sections 70 and 71 of the Penal Code, nor did he confuse the law of voluntary manslaughter with the law of self-defense as embodied in section 73 of the Penal Code, by instructing the jury as complained of in the eleventh ground of the motion for a new trial.

11. The requested instructions as set forth in the thirteenth and fourteenth grounds of the motion were not adjusted to the evidence, and were properly refused. The defendant having stated to the jury that his mind became a blank prior to the fatal shooting, and it appearing that for that reason he was unable to state what further occurred until a considerable period of time had elapsed after the homicide, it was not error for the court to permit the State in rebuttal to offer testimony tending to show the sound mind of the accused. In these circumstances, correct instructions to the jury upon the subject of insanity as applicable to the evidence in the case, in which the jury were charged that if they had any doubt as to the sanity of the accused he should be acquitted, afford no such ground of complaint to the accused as would warrant a new trial.

12. The alleged newly discovered evidence was not of such nature as to require the grant of a new trial.

13. The court did not err in instructing the jury as set forth in the twenty-fourth ground of the motion for a new trial.

14. The fifth, twelfth, sixteenth, and twenty-third grounds of the motion, not being referred to or argued in the brief, must be treated as abandoned.

15. The evidence authorized the verdict.

No. 5021. September 25, 1926. Rehearing denied September 30, 1926.

Murder. Before Judge Mathews. Bibb superior court. June 25, 1925.

W. O. Cooper Jr., R. I. Stephens, and J. R. Terrell, for plaintiff in error.

George M. Napier, attorney-general, Charles H. Garrett, solicitor-general, and T. R. Gress, assistant attorney-general, contra.

Russell, C. J. 1. The plaintiff in error was tried for the offense of murder, it being alleged in the indictment that he killed J. Walter Johnson on December 16, 1924, by shooting him with a pistol. The defendant was found guilty, without recommendation. He made a motion for a new trial, which was overruled. He excepted upon various grounds hereinafter stated. Without recapitulation of the evidence, which has been carefully considered, it can not be held that the evidence in behalf of the prosecution is insufficient to authorize the conviction of the accused; though there was testimony in behalf of the defendant which, if credible to the jury, would have sustained his plea of self-defense and would have authorized the jury to acquit him. So it can not be held that the judge erred in overruling the three general grounds of the motion for a new trial, unless it appears from the remaining assignments of error that the verdict of guilty was induced by errors in the trial, as alleged in the special

grounds of the motion for a new trial. Twenty-four grounds are contained in the amendment to the original motion. For the sake of convenience, and following the subdivision made by counsel for plaintiff in error, we shall group some of the assignments of error, and consider the case as presenting in one way or another thirteen reasons why the plaintiff in error, according to his insistence, should be granted another trial. In the first special ground of the motion complaint is made that certain jurors were disqualified, because in answer to the voir dire question, "Are you conscientiously opposed to capital punishment?" they replied that they "were, in case of circumstantial evidence." As qualified by the note of the trial judge this ground of the motion, not being approved, presents nothing for our consideration as to one of the jurors. This confines our inquiry as to whether there was error in standing aside for cause the jurors Parmenter, Holmes, and Long, because they answered they were opposed to capital punishment on circumstantial evidence. The court did not err in its ruling. Where the capital punishment can be inflicted, a juror who is opposed to capital punishment is incompetent to try such a case. The exact point was expressly ruled in *Smith* v. *State,* 146 *Ga.* 76 (90 S. E. 713) ; and in *Mickens* v. *State,* 149 *Ga.* 185 (99 S. E. 779), it was held: "On the trial of one indicted for murder the court properly held a person incompetent who, in reply to the statutory question on the voir dire, testified: 'I am opposed to capital punishment in cases of circumstantial evidence.' Neither the trial judge nor any one else can anticipate with any degree of certainty the exact character of all the evidence that may be developed and submitted on a trial. 24 Cyc. 310, and cases cited in notes 96 and 97." The ruling in *Bell* v. *State,* 91 *Ga.* 15 (16 S. E. 207), has no bearing upon the point sub judice.

2. In the second and fifteenth special grounds of the motion the plaintiff in error insists that the court erred in admitting the evidence of William Branan and Mrs. Gregory, as set forth in said grounds, for the reason that this evidence was immaterial, irrelevant, and prejudicial to the defendant, and tended to show a separate and distinct transaction or crime for which the defendant was not then on trial. It is argued that the testimony of William Branan (second ground) and Mrs. Gregory (fifteenth ground) to the effect that after the defendant shot the deceased he backed

his car out and went rapidly to 17 Hill Park, and, when he got up there, without a word he shot his wife twice and shot his wife's mother and then tried to shoot himself, was "illegally admitted to the jury and virtually put him on trial before the jury for other and separate and distinct and independent crimes in no way connected with the crime with which he was on trial, and could not be judged proper evidence either for the purpose of showing motive or of identifying the defendant. There was no question as to the identity of the person who killed the deceased, . . as there was no issue on this point and there was no denial by the defendant that he killed Johnson, and this evidence could in no sense be urged as proper evidence by which the jury could infer motive." The testimony of the officer, Branan, was admissible, if for no other reason, as a part of the res gestæ of the arrest. *Arnold* v. *State,* 131 *Ga.* 494 (62 S. E. 806). It is questionable whether the assignment of error properly presents the complaint of plaintiff in error; because it is not error, where testimony is objected to as a whole and any part of it is admissible, to overrule the objection as not properly made, for the court is not required to sift the wheat from the chaff. But assuming that the assignment of error is well made, it seems clear to us that under the rulings in *Farmer* v. *State,* 100 *Ga.* 41 (2) (28 S. E. 26), *Frank* v. *State,* 141 *Ga.* 243 (2 *a-c*) (80 S. E. 1016), and *Williams* v. *State,* 152 *Ga.* 498 (110 S. E. 286), the testimony objected to was relevant and admissible upon the subject of motive. *Arnold* v. *State,* supra; *Glover* v. *State,* 137 *Ga.* 82 (72 S. E. 926).

3. In the third special ground of the motion the plaintiff in error complains because the court, on motion of the solicitor-general, excluded the testimony of J. L. Robinson, a witness for the defendant, who had testified: "I had several conversations with Johnson. I had a conversataion with him about a money matter. He told me he made away with right smart of Swain's money, and not to say anything to him about it." It is insisted that this evidence was admissible for the purpose of explaining "the mind, motive, and attitude of Johnson, the deceased, towards Swain, the defendant, and it was for the jury to say what the deceased meant when he told the witness that 'he made away with right smart of Swain's money and not to say anything to him about it.'" Plaintiff in error insists, that, "in view of the thread that ran through

the entire testimony with reference to the intimacy between the deceased and the wife of the defendant, this evidence was proper and admissible to throw any and all light possible on this relationship that existed between deceased and defendant's wife, and certainly was this evidence permissible if such intimacy had any connection with the homicide." We think the evidence was correctly excluded as irrelevant. As ruled in *Sasser* v. *State,* 129 *Ga.* 541, 547 (59 S. E. 255), "under the facts of this case, proof of bad feeling of the deceased toward the defendant alone would not be admissible. In order to make it admissible, it would have to be shown that the defendant knew of it."

4. In the fourth ground of the motion for a new trial the plaintiff in error complains that Miss Virginia Fowler was permitted to testify: "Mr. Johnson was a very special friend of mine. Prior to the homicide he had been going with me constantly. At the time he was killed I was going to school at Lanier High School. He used to go to school nearly every morning with me, and in the afternoon he would meet me on Spring Street if he was late, and if he was early he would go to Mrs. Gregory's and stay until I came. The Gregory's back door goes into our back door; the lots back together. He frequently waited for me at the Gregory home, except on Saturdays and Sundays, when he would come to my house. It cut off about two blocks for me to go by the Gregory home. We had been engaged to be married about three months. We used to live in the house with Mrs. Swain. She was an intimate friend of mine. Mr. Johnson did not show Mrs. Swain any attention at all. Mr. Johnson and I were to be married the next day after he was killed; we were going to Bolingbroke, and R. E. Gregory was going with us. My parents did not want me to marry right then, but they said we could afterwards. This marriage license, dated December 9, 1924, and signed C. M. Wiley, ordinary, is the license Mr. Johnson bought and gave me under which we were to be married." The objection to. this testimony was based on the ground that "the same is immaterial, irrelevant, and prejudicial to. the rights of the accused," and it is contended that the court should have "sustained the objection and ruled the testimony out of the consideration of the jury." It appears from the record that in admitting the testimony the court ruled as follows: "The only question is whether or not it is competent and

relevant. It might tend to illustrate the truth of the case. The defendant introduced evidence, over objection of the State's counsel, as to some statements made by Johnson, which might be construed to mean that Johnson had some relations with Mrs. Swain, indicating that she did not care for her husband. I think it is admissible to rebut that evidence." The defendant had introduced witnesses to prove that the deceased boasted of an intimacy with the defendant's wife, went to Brunswick in an automobile which he said was hers, and claimed to have received money from her. In the state of the record we can not say that the evidence was not admissible, as stated by the judge, in rebuttal of the testimony introduced by the defendant.

5. In the sixth ground of the motion the plaintiff in error insists that the court erred in admitting the certificate of the United States War Department of the army service record of J. A. Swain. It seems to us that this certificate was immaterial and irrelevant, but after careful consideration we are of the opinion that the error in its admission was harmless. The marriage license of Miss Virginia Fowler was properly admissible, because the defendant had introduced evidence tending to show undue intimacy between Johnson and the defendant's wife, and the circumstance that the defendant's wife was extremely intimate with Miss Fowler and knew of her approaching marriage to the deceased might have some probative value as a circumstance explanatory of the conduct of the deceased and his frequent visits to the home of the defendant's wife as a place of rendezvous with his fiancee.

6. The seventh ground of the motion is as follows:

"Movant charges the following reasons why the verdict and sentence should be set aside and a new trial granted: Because, after the State and defendant had closed the evidence and the defendant had made his statement to the court and jury, the solicitor-general, Chas. H. Garrett, in open court and in the presence of the jury, publicly announced to the court that he would like for the jury to go to the scene of the homicide, so that the jury might make inspection and view the premises of the alleged homicide. The court, addressing movant's counsel publicly and in the presence of the jury, then asked defendant's counsel if he had any objection; whereupon counsel for the defendant then and there stated that he had no objection if the same circumstances

and conditions existed as of the night of the alleged homicide, and that if the lights were on in J. W. White's store as they were on the night of the alleged homicide. The jury were then taken to the scene of the alleged homicide, or near it, without the presence of the trial judge, without the presence of the defendant, J. A. Swain, and, without the presence of the defendant's counsel, made views and inspection of the premises at and near the alleged homicide, and made demonstrations among themselves, some of whom stationed themselves at some point and some at another, demonstrating with a pistol, being the 45-calibre pistol introduced in evidence as that of the deceased, in their hands to and with the other jurors, and thereby demonstrating with and to each other to determine whether a pistol could be seen as testified to by defendant's witnesses. The night was cloudy, or foggy and rainy, and not the character of night of the alleged homicide, and the streets were not as brilliantly lighted as on the night of the killing. Movant attaches hereto affidavits of [named witnesses], showing the conduct of the jury as above set forth, and also the absence of defendant and his counsel at said time. Movant insists that it was improper for the solicitor-general to have made the motion or request for the jury to go and view the scene of the homicide, as indicated above, publicly in open court in the presence of the jury, and that the court committed error in asking defendant's counsel publicly and in the presence of the jury if he would consent to the jury going to the scene of the homicide, or if he had any objections, for the reason that it placed defendant in a very critical position or attitude with hurt or injury to defendant if he consented or if he refused or objected. Said questions both of the solicitor-general and of the court should have been propounded to the defendant or defendant's counsel in private, and not within the hearing of the jury. Neither defendant nor his counsel waived defendant's presence at the place and time the jury were taken to the scene or alleged scene of the homicide; neither did either waive such presence of defendant's counsel. The court did not call upon defendant nor his counsel to go with the jury to the alleged scene of the homicide. The jury left the court-room unaccompanied by the trial judge, the defendant, or his counsel, but they, the jury, proceeded out into the city of Macon, Georgia, away from the court-room; away from the trial of the

case, across the street and several blocks away, or about 100 yards from the court-house, in the way and manner indicated above; proceeded with the trial of defendant in his absence and in the absence of defendant's counsel, and also in the absence of the trial judge, for the purpose of viewing and inspecting the scene of the homicide and making ocular demonstrations among themselves with a pistol, without the presence of the defendant, the trial judge, or the defendant's counsel, and in viewing the surroundings, lights, and distances as evidence in the case, at which time the defendant was left in the hands of the law and in custody, entirely out of sight or hearing of the jury and the presiding judge, and without the presence, sight, or hearing of any of the evidence then being used as aforesaid against defendant. And neither did defendant nor his counsel make any waiver of his right to be present during this stage of his trial; and the defendant, J. A. Swain, did not authorize his counsel to make such waiver for him, and his counsel did not make any such waiver. The only thing that counsel for defendant said when called upon publicly by the trial judge to know if he had any objections to the jury going to the scene of the homicide he replied: 'Not if the same conditions and circumstances existed as on the night of the alleged homicide, and if the lights were on like they were on, the night of the homicide, at J. W. White's store.'

"Movant insists that said error on the part of the court was very harmful to defendant; and furthermore the jury, by their acts and conduct as set forth above, were creating or using or viewing evidence against the defendant, and not in his presence, nor that of his counsel, because the court had ordered that no one accompany the jury except the officers of the court, meaning the sheriff and his deputies." Movant insists that on account of the errors above set forth he has been denied his constitutional right of being present at every stage of his trial; further, that the above was in violation of art. 1, sec. 1, par. 5, of the constitution of Georgia, which provides that "Every person charged with an offense against the laws of this State shall be confronted with the witnesses testifying against him;" and also art. 1, sec. 1, par. 3, of the constitution of Georgia, which declares that "No person shall be deprived of life, liberty, or property, except by due process of

law;" and also violative of the fourteenth amendment of the constitution of the United States, which provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Movant contends further that for all the reasons hereinbefore assigned the action of the court was tantamount to and amounts to a denial of one of the forms of law that is guaranteed to every person, that is, "to be present during all the stages of the trial of his case," and especially is this true where a person is on trial for an offense for which the death penalty can be inflicted. Movant further insists that the court erred in permitting William Branan, one of the witnesses for the State, who arrested the defendant and who testified against him, to accompany the jury to the place and places set forth above, and to be present while the jury were inspecting and making ocular demonstrations among themselves with pistols, and viewing the premises as aforesaid; all of which was done in the absence of the trial judge, the defendant, and the defendant's counsel. And during said viewing and inspecting by the jury they were separated from each other some 15 or 20 steps. Furthermore, the jury were inspecting and viewing the premises at about 8:30 o'clock p. m. on February 25, 1925, and the alleged homicide occurred at about 7 o'clock p. m. on December 16, 1924; "all of which movant assigns as error as above set forth, all of which reasons the defendant assigns the same as error, and says that the court committed error in permitting such to be done. Counsel for defendant objected to any officers of the court who had testified in the trial of the case going with the jury to the scene of the homicide."

This ground of the motion is qualified by the following note of the court: "With reference to the action of the court · in permitting the jury to visit the scene of the homicide, the following are the true facts: Upon the conclusion of the evidence in the case the court recessed for supper, and reconvened about 7:30 p. m., for argument. Immediately after reconvening, the solicitor-

general stated in open court that he would very much like for
the jury to be permitted to visit the scene of the homicide, that
this scene was only diagonally across the street from the court-
house, and only a few minutes would be required for the inspec-
tion; that his understanding of the evidence was that the homi-
cide occurred at about the same hour of the day as that at which
he was making the statement, but at a period of the year when
the days were much shorter than at the time of the trial, which
would operate to the disadvantage of the State, if anybody; that
he would like to know the position of defendant's counsel on this
proposition.  Defendant's counsel immediately replied, without
making any motion for mistrial, or taking any other action, and
without any suggestion from the court, by word, look, or other-
wise, that they approved of the solicitor-general's suggestion, and
heartily joined in the request.  The solicitor-general thereupon
said that he would like to have a statement from his brethren of
the defense as to who ought to go with the jury and who ought
to stay away.  The counsel for the defendant then said that they
thought the jury ought to go in charge of two officers, neither of
whom had been a witness in the case, and that no person ought
to be allowed to speak to the jury or interfere with the jury; that
the lights ought to be turned on in the adjacent stores of J. W.
White and the Sanitary Barber Shop as nearly as possible as they
were at the time of the homicide, and that nobody else should
go with the jury.  The court thereupon, at the said joint request
of the solicitor-general and defendant's counsel, gave instruction
to the sheriff to send officers ahead to have the lights turned on
in the adjacent stores, and have precautions taken to keep pedes-
trians and others from interfering with the jury or talking with
them, and the court sent the jury to the scene of the homicide
afterwards in the custody of bailiffs Robert Rodgers and W. S.
Simmons, neither of whom was a witness in the case.  The de-
fendant was present with his counsel in open court when the pro-
posal was made by the solicitor-general to send the jury to the
scene of the homicide and when all of the discussion took place
concerning that proposal as herein recited, and said nothing. The
court has no recollection as to whether the evening was dark or
fair."

In the hearing upon the motion for a new trial, upon a counter-

showing offered by the State, the court heard testimony as to the matters and things recited in the seventh ground of the amended motion. Affidavits were introduced, not only in behalf of the State, but also in behalf of the defendant and in support of the allegations contained in the seventh ground of the amended motion. Upon such hearing the court is the exclusive judge of the credibility of the witnesses, and his discretion as to credibility in case of conflict in the testimony is not reviewable by this court. There is testimony which authorized the court to find that defendant's counsel was fully informed of all the conditions and occurrences of which complaint is now made, at the time and before the jury returned to proceed with the trial. At that time no objection was offered nor was any motion for mistrial made; and so the crucial question is presented whether the failure to object in limine, in the mode prescribed by law, was a waiver of the right to object after verdict. According to the rulings in *Metropolitan Street Railroad Co.* v. *Johnson,* 90 *Ga.* 501 (6) (16 S. E. 49), *Bowens* v. *State,* 106 *Ga.* 760, 764 (32 S. E. 666), and cit., *O'Dell* v. *State,* 120 *Ga.* 152 (47 S. E. 577), *Nix* v. *State,* 149 *Ga.* 304 (3) (100 S. E. 197), and other authorities which might be cited, the defendant had a full, adequate, and complete remedy by motion for a mistrial. He might have moved for a mistrial when State's counsel made the proposal; for such a proposition should not have been made in the presence of the jury, thus forcing the defendant's counsel into an unfair position should he feel inclined to decline the offer, and thereby prejudicing the cause of the defendant before the jury. But accepting, as we must, the finding of the trial judge as to what really occurred in the street, and the fact that counsel for the accused knew what had occurred, and the note of the trial judge, which is conclusive as to the facts recited in it, we think that the failure of the defendant to move for a mistrial when the jury returned to the court-room, and before proceeding further in the trial, was a waiver of any other right to object to the proceedings of which complaint is now made in the seventh ground of the amended motion. As said by Mr. Justice Hill in delivering the opinion of this court in *Frank* v. *State,* 142 *Ga.* 741, 762 (83 S. E. 645, L. R. A. 1915D, 817), as to waivers by defendants in criminal cases: "They may waive copy of indictment, formal arraignment, and list of witnesses be-

fore the grand jury, all of which are important rights. They may waive a preliminary hearing before a committal court, a jury of twelve to try them, or any legal objection to jurors who have qualified on their voir dire; they may even waive trial entirely, plead guilty of murder, and be sentenced to hang. *Sarah* v. *State,* 28 *Ga.* 576 (2), 581; *Wiggins* v. *Tyson,* 112 *Ga.* 745, 750 (38 S. E. 86)."

7.  In the eighth ground of the motion it is assigned as error that the court charged the jury: "The killing in this case would be murder if the jury should find that it was [for] the purpose of avenging some past wrong; the law being that a man has no right to take the law in his own hands and avenge a past wrong by killing a person that he thinks guilty of such wrong, whether it be a real wrong or a fancied wrong, and that would be true regardless of the nature of the wrong, however heinous the wrong may be." There are two grounds of exception to the charge: first, that by using the language quoted the court intimated and expressed an opinion upon the evidence, in violation of section 1058 of the Penal Code of 1910; and second, because the charge was not authorized by the evidence. It is clear that there is no merit in the first ground of exception, unless it be in the use of the words "killing in this case;" and this statement was not erroneous, because the fact that there was a killing was admitted (*Johnson* v. *State,* 30 *Ga.* 426 (5)), and the use of the words "by killing a person that he thinks guilty of such wrong, whether it be a real wrong or a fancied wrong" is not subject to exception. The second exception can not be sustained, because the defendant had introduced evidence indicating the probability of undue intimacy between his wife and the deceased.

8. In the ninth ground of the motion the plaintiff in error complains that the judge charged: "I charge you upon that subject that intermittent insanity caused by physical weakness or nervous disorder does not render a person of unsound mind, or lacking in discretion, unless at the time of the commission of the act he was incapable of knowing it was wrong, or right, and incapable of knowing the consequences of his act." It is assigned as error that there was no evidence to authorize such a charge, and that the law in the abstract was not properly given to the jury. We are of the opinion that the excerpt from the charge

is of itself ·a correct statement of law; and the plaintiff in error
can not complain that it was error in any event to charge upon
the subject of insanity, because he himself requested instructions
upon the subject, and the substance of the instruction of which
complaint is here made is embodied in different language in one
of these requests, to which reference will later be made. Viewing
the excerpt just quoted in connection with the entire instruction
of the court upon the subject of insanity, the correctness of the
instruction complained of more fully appears.

9. In the tenth ground of the motion it is assigned as error
that the court charged the jury: "To render one incapable of
crime he must at the time of the commission of the act charged
against him have been in such a mental condition as that he did
not know the act done or committed by him was wrong." The
exception to this instruction is that "this is not the law and did
not apply in this case, as there was no evidence to authorize it.
The court having given the above in charge, he should have ex-
plained further to the jury the law of delusional insanity, in which
instance, had the defendant killed the deceased while being over-
powered by such delusion caused by a diseased mind, then the
general test of knowing the distinction between right and wrong
would not apply; which said error in said charge as above quoted
movant insists that the same is error and inured to his hurt and
serious damage, and therefore the defendant assigns the same as
error." If there had been evidence in this case tending to show
that the defendant was influenced at the time of the homicide by
any delusion which overpowered his will, the exception would be
well taken. *Flanagan* v. *State,* 103 *Ga.* 619, 627 (30 S. E. 550).
But there is no evidence in the record that the mind of the de-
fendant was enfeebled by disease, or that can be construed as
showing that the defendant entertained any delusion at the time
the fatal shot was fired.

10. In the eleventh ground of the motion the plaintiff in error
contends that the court confused the law of voluntary man-
slaughter with the law of justifiable homicide as embodied in sec-
tions 70 and 71 of the Penal Code, as well as with the law of self-
defense as embodied in section 73 of the Penal Code, by charging
the jury: "That, gentlemen, is the distinction, in the language
of the law, between murder and voluntary manslaughter. The

distinction you will observe in voluntary manslaughter is a killing without malice, without any premeditation, and in murder the killing is with malice as a result of premeditation or a deliberate intent to kill or where there is no considerable provocation given and where all the circumstances of the killing show a malignant and abandoned heart; but voluntary manslaughter is a killing without that kind of malice, either express or implied, but as a result of a sudden heat of passion aroused either by an assault made on the person killing or an attempt by the person killed to commit a personal injury upon him, or other similar circumstances, in the opinion of the jury, sufficient to justify the excitement of a sudden heat of passion, for the reason that the law presumes that mitigates the offense in murder or where a man does it upon a sudden heat of passion, but a man is never justified in killing as a result of malice, or as a result of a sudden heat of passion, unless there is some necessity to kill; but if he kills upon a sudden heat of passion justified by an assault made upon him, or other equivalent circumstances, and yet when there is no necessity to kill in order to save his own life or to protect himself from a felonious assault, then he would be guilty of voluntary manslaughter." As is apparent from reading the excerpt, this exception can not be sustained. Furthermore, the use of the word "necessity" in this instance could not have been harmful to the defendant, because in a previous portion of the charge the court had clearly drawn the distinction between a real necessity and an apparent necessity as indicated to the mind of the defendant by circumstances. The prior explanation of the court was in these words: "But in order that a man may be authorized to kill another in self-defense, it must appear there was immediate danger to him, to his life, at the hands of the person killed, or it must appear that the person killed was seeking at the time to commit a felonious assault upon him, and unless such necessity existed, why the killing is not justifiable, that is, unless the necessity existed or unless the circumstances were such as to authorize the killer to believe that his life was in danger, or that the person killed was about to commit upon him a felonious assault. It may happen sometimes there is no real danger, but the circumstances may authorize the killer to believe that such a danger existed, and he may act upon the fears of a reasonable man that he is

about to be killed himself, or about to suffer a felonious assault; but the fear must be a reasonable fear that would authorize one man to kill another, it must be the fears of a reasonable man. A bare fear not supported by reason would not justify the killing of another. The circumstances must be such as to have authorized him, as a reasonable man, to believe that such danger existed at the time." A little further in the charge the court also instructed the jury as follows: "He would not be authorized to kill Johnson, if the only provocation he had at the time consisted of words, threats, menaces, or contemptuous gestures, unless at the time it was evident to him or appeared to him as a reasonable man that Johnson was about then and there to put his threats into effect and was about to commit upon him a felony, or a killing." We take this to be a sufficient statement of the doctrine laid down in *Cumming* v. *State,* 99 *Ga.* 662 (27 S. E. 177), and similar subsequent cases.

11. The thirteenth and fourteenth grounds of the amended motion were qualified by the following note of the trial judge: "After the evidence in chief by the State had been introduced, and the evidence in chief by the defendant and the defendant's statement, the State proceeded to introduce considerable rebuttal evidence. In connection with this rebuttal, the State tendered Dr. Y. A. Little as a witness. The defendant's counsel objected to Dr. Little testifying, and based his objection on the ground, stated in open court, that Dr. Little was an expert on insanity, and that he was not pleading insanity for the defendant nor relying upon the law of insanity. State's counsel called attention of the court to the fact that defendant in his statement had claimed that his mind became a blank after he saw the deceased make certain hostile demonstrations, and that he did not clearly remember anything that transpired after that for several hours; and specially that the defendant disclaimed in his statement the ability to recall what transpired in a conversation, which had been testified to, between him and officers Branan and Stevens in the presence of the solicitor-general, at the jail on the night of the homicide, and sometime after the State's evidence showed the homicide had been committed. The State's counsel then stated that he proposed to prove by Dr. Little that no such amnesia, as that claimed by the defendant, was possible in view of an ex-

amination that Dr. Little had made of the defendant; and the court thereupon admitted Dr. Little's statement. In charging the jury, the court acted upon the statement of defendant's counsel that he was not pleading general insanity, as well as upon the fact that there was nothing in the evidence or in the prisoner's statement to suggest that the defendant was afflicted with delusional insanity, or acted at the time under the impulse and influence of a delusion. The court thought it wise, however, in view of the defendant's contention made in his statement that he was nervously afflicted, and in view also of the rebuttal evidence introduced by the State on that subject, to instruct on the general principles of the law of insanity as governing criminal responsibility." Upon a review of the evidence in this case it does not seem that the court was required to charge at all upon the subject of insanity, and for this reason it was not error to refuse the requests presented by defendant's counsel, as embodied in the thirteenth and fourteenth grounds of the motion. Such instructions as were given were correct statements of law; and so far from being harmful to the defendant, the suggestion of insanity was favorable to the accused, in view of the fact that the jury were instructed that if they had any doubt about the sanity of the accused he should be acquitted.

12. The seventeenth, eighteenth, nineteenth, twentieth, twenty-first, and twenty-second grounds of the motion for a new trial assign error in each instance upon the refusal of the court to grant a new trial upon the ground of newly discovered evidence. As well stated by counsel for the plaintiff in error in the brief: "We recognize the rule to be that the courts are loath to grant new trials on newly discovered evidence," and a new trial will not be granted upon this ground where the newly discovered evidence is merely cumulative or impeaching. Pretermitting consideration of the point raised by State's counsel, that the names of the associates of the alleged newly discovered witnesses are not given, so as to enable the State to prepare a counter-showing, as ruled in *Ivey* v. *State*, 154 *Ga.* 63 (6) (113 S. E. 175), a very careful and painstaking review of the testimony introduced in the trial has convinced us that we can not say that the trial judge erred in holding that the proof as to the whereabouts of the deceased during the day and afternoon of the homicide (even if

this testimony is in any sense material), and as to the finding of the knife and 45-calibre pistol at the scene of the homicide (which is material), was merely cumulative of testimony already introduced, and/or impeaching as to testimony delivered at the trial.

13. In the twenty-fourth ground of the motion the plaintiff in error complains that the court erred in giving the following charge to the jury: "If the evidence shows to a reasonable and moral certainty that the defendant slew the deceased with the weapon and in the manner described in the indictment, and if the evidence does not show there was any excuse or mitigation for the homicide and does not authorize any reasonable doubt upon this subject, malice would be presumed, and the burden would be on the accused to show a justification, or at least raise a reasonable doubt as to whether such killing is justifiable." It is insisted that this charge placed a greater burden upon the defendant than imposed by law; "that whenever the accused admits the homicide, but at the same time states circumstances of justification, mitigation, or alleviation, and the testimony of the witnesses for the defendant establishes like circumstances, it is error for the court to charge as above set forth. Said charge is further assigned as error, because, as movant contends, under the facts of this case, if the evidence is believed, the evidence which showed that the defendant committed the homicide also showed that he was justified in doing so. Therefore the burden was never shifted in this case, and said charge was erroneous because not applicable to the proven facts, and placed a burden upon the defendant which under the law he was not required to carry." The above instruction is a correct statement of the law, and is not subject to the exceptions urged against it. It did not shut out from the jury the consideration of any of the evidence introduced tending to show an excuse or mitigation for the homicide, because the judge expressly referred to these. It placed no burden upon the defendant, unless the jury disbelieved the testimony in behalf of the defendant which could be construed as showing justification or mitigation.

*Judgment affirmed. All the Justices concur, Beck, P. J., and Atkinson, J., specially.*

BECK, P. J. I concur in the result reached in this case, but do not agree with all that is said in the sixth division of the opinion.

I do not think that the incident set forth in that division of the opinion contains anything which in the slightest interfered with the defendant's right to a full and fair trial, nor, in view of the judge's note to that ground, was there anything to which the defendant could have taken exception if he had moved immediately, as nothing to prejudice his rights had occurred, nor was he in any way deprived of any such rights by any action of the court; for his counsel not only consented to the proposition that the scene of the homicide should be viewed by the jury, but he stated to the court that he gladly embraced the proposal that such should be done.